Elyse W. Germack
(Michigan #P71778  - Pro Hac Vice for this matter)
*Attorney for the Defendant*
NUTCO, INC.
2140 Wilkins Street
Detroit, MI  48207
Cell: 248-227-2810
germack.elyse@gmail.com


## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK


| | | |
|---|---|---|
| CHRISTIAN SANCHEZ, on behalf of himself and all others similarly situated, | : | |
| Plaintiffs, | : | Case No.1:20-cv-10107 |
| v. | : | |
| NUTCO, INC. | : | |
| Defendant. | : | |

PLEASE TAKE NOTICE that Defendant, Nutco, Inc., ("Nutco"), requests that this Court pursuant to Fed. R. Civ. P. 12(b)(1)  and 12(b)(2) dismiss this action on three grounds: mootness; lack of subject matter jurisdiction; and, lack of personal jurisdiction. Plaintiff's claims have been mooted by Defendant's remediation efforts. Plaintiff has not pleaded an injury-in-fact. Defendant does not conduct business in New York State.  Plaintiff's claims do not arise out of Defendant's business activity in New York State.

A memorandum of law and affidavit of Frank A. Germack, III with exhibits in support of this Motion are attached.


Dated:  March 9, 2021

By:  /s/ Elyse W. Germack
Elyse W. Germack (Michigan #P71778 – Pro Hac Vice for this matter)
*Attorney for the Defendant*
NUTCO, INC.
2140 Wilkins Street
Detroit, MI  48207
Cell: 248-227-2810
germack.elyse@gmail.com

Elyse W. Germack (Michigan #P71778 – Pro Hac Vice for this matter)
*Attorney for Defendant* NUTCO, INC.
2140 Wilkins Street
Detroit, MI  48207
Cell: 248-227-2810
germack.elyse@gmail.com


Defendant certifies that this motion was served on Plaintiff through his
attorney Joseph Mizrahi of Cohen & Mizrahi LLP via ECF on March 9, 2021.

Elyse W. Germack (Michigan #P71778 – Pro Hac Vice for this matter)
*Attorney for Defendant* NUTCO, INC.
2140 Wilkins Street
Detroit, MI  48207
Cell: 248-227-2810
germack.elyse@gmail.com

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTIAN SANCHEZ, on behalf of himself
and all others similarly situated,                          :

Plaintiffs,                                                           :        Case No.1:20-cv-10107

v.                                                                         :

NUTCO, INC.,                              :

Defendant.                                                         :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

MEMORANDUM IN SUPPORT OF MOTION

A.  INTRODUCTION

1.        Nutco, Inc. d/b/a Germack Pistachio Company ("Nutco") is a small, Germack

family owned business and snack food (specializing in roasted nuts) processor, wholesaler,

and local distributor established in 1924 in Detroit, Michigan.   Nutco produces goods

under the Germack brand and logo.

2.      Plaintiff, Christian Sanchez (a legally blind, New York resident), alleges that Defendant Nutco (a Michigan corporation), has failed, "to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people," and that "Defendant's denial of full and equal access to its website, and therefore denial of its goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ('ADA')." ((First Amended Complaint ("Complaint") at ¶11, ¶12,¶4)).  According to Plaintiff, visually-impaired customers cannot fully access websites unless they are designed to be read by screen-reading software (Id. at ¶15).  For this software to function, the information on a website must be capable of being rendered into text (Id. at ¶17) so that the screen-reader can read aloud information on a website to a user.

3.      Nutco held the domain registration for the internet address www.germack.com at the time the Complaint was filed, because it used to operate a website at that address over ten years ago, and inadvertently never moved the registration over to the current operator of a website at that address, Germack Roasting Company, LLC ("Germack Roasting Company").  Nutco does not have any involvement in the customer facing design, construction, maintenance or operation of the Website, apart from making some informational content contributions. ((Frank A. Germack, III Affidavit ("Germack Aff.")  at ¶6)).

4.      Nutco produces and wholesales Germack branded nuts, seeds, trail mixes, dried fruit and chocolates and operates a factory and warehouse in Detroit, Michigan. (Germack Aff. at ¶2(a)).  Germack Roasting Company produces Germack branded coffee, and operates the website and a Germack branded retail building in Detroit, Michigan.

(Germack Aff. at ¶2(b)).  The website has content related to Nutco and Germack Roasting Company operations, and sells products that originate from both companies and are owned, inventoried, sold and shipped by Germack Roasting Company. (Germack Aff. at ¶6).

5.      Plaintiff last visited the website located at www.germack.com ("Website") in November 2020 while using a JAWS screen-reader (Complaint at ¶25), but he does not appear to know the first thing about Nutco or the Website. (Complaint at ¶20, ¶23, ¶33)(Plaintiff thinks Nutco and the Website only sell pistachios even though there are over 300 products for sale on the Website).

6.      Plaintiff encountered some accessibility "barriers" while on the Website, but provided no specifics on his visit or the barriers. (Complaint at ¶27-¶30).  Further, Plaintiff (instead of calling Nutco to discuss his accessibility issues) is obviously a "tester" working with an investigator.  The investigator encountered different accessibility "barriers" while visiting the website.  (Complaint at ¶31). We are not told who he/she is, what type of vision aid, if any, he/she is using, or whether he/she is vision-impaired.  The credibility of the investigator is compromised by referring to a barrier associated with a website element that does not even exist (e.g. product reviews). (Id.)  As a result, Plaintiff asserts that the Website is "not fully accessible to and independently usable by" vision-impaired persons. (Complaint at¶4, ¶41).

7.      Plaintiff asserts that the Website is a public accommodation to New York State residents under the ADA (Complaint at ¶13), and as such Defendant violated the accessibility requirements of the ADA when Plaintiff was "deterred" [ ] "from learning about those various pistachios for purchase and delivery, and enjoying them equal to

sighted individuals because: Plaintiff was unable to determine and or purchase items from its Website, among other things." (Complaint at ¶33).

8.      While we can all agree Germack pistachios are enjoyable, it is nonsensical to assert that because Plaintiff was "deterred" from "learning about and enjoying" a $2.99-$68.99 bag of Germack "pistachios" that he has a legitimate basis for an ADA lawsuit, or that it merits hiring investigators, attorneys, and $400 in court costs.  Nutco would have sent him a free bag of pistachios had he bothered to call and complain.  This lawsuit is obviously not about the accessibility of Nutco's pistachios.

9.      Plaintiff is seeking a permanent injunction under the ADA "to cause a change in Nutco's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers." (Complaint at ¶5, ¶39).  Plaintiff seeks a permanent injunction that requires the Defendant to implement certain (but it's unclear from the Complaint which ones) Web Content Accessibility Guidelines (WCAG) issued by W3C, a nonprofit "think tank" with no actual authority. (Id. at ¶18, ¶36, and ¶39).

10.      Plaintiff is mistaken throughout the Complaint about the nature and extent of Nutco's business operations; Nutco does not conduct any online or other business in New York State. (See, e.g. Complaint at ¶4, ¶8, ¶12, ¶21).  Nutco does not ship or deliver any products to New York State.  Nutco does not have any distributor arrangements or capabilities in New York State.

11.      Nevertheless,  Nutco has provided evidence and assurance through the attached Affidavit of its president, Frank Germack, III,  that the Website is now and will remain accessible to blind and visually-impaired consumers.  (Germack Aff. at ¶18).

12.     It is fundamentally unfair that Nutco, Inc. is facing a website accessibility lawsuit: (i) for a website it does not operate; (ii) in a state where it conducts no business; (iii) by a person who is not a plausible customer, using technology beyond Nutco's control, and giving no notice or specifics about his website visit; (iv) seeking an injunction for Nutco to comply with optional website accessibility guidelines.

13.     The defendant is making a motion to dismiss this lawsuit as the court lacks personal and subject matter jurisdiction over the defendant.   Plaintiff's claim has been mooted by Defendant's remediation efforts.  Plaintiff has not pleaded an injury-in-fact now or into the future as is required by invoking an injunction under the ADA.  Defendant does not conduct business in New York State, and the Plaintiff's claim does not arise out of that business, under New York's long-arm statute.

14.     Nutco respectfully requests that the court consider awarding Nutco monetary damages as provided by federal law, including but not limited to sanctions under Fed. R. Civ. P. 11, to compensate Nutco for its time, costs and fees associated with this lawsuit.

FACTUAL BACKGROUND

15.     Sanchez is a visually impaired and legally blind person who resides in New York, New York.  (First Amended Complaint (Complaint at ¶11.) Nutco is a Michigan corporation. (Complaint at ¶12.) Nutco is a snack food processor, wholesaler and distributor located exclusively in Detroit, Michigan and selling products to groceries, convenience stores and other food retailers under the Germack brand and logo. (Germack Aff. at ¶2, 2(a)).

16.     Nutco operates a factory and warehouse with a physical location only in Detroit, Michigan. (Germack Aff. at ¶2(a)).  Nutco does not have any employees or company locations outside of Detroit, Michigan, and does not have any customer accounts in New York. (Germack Aff., at ¶4, ¶5).  According to the Website store locator, and confirmed by Frank A. Germack, III, no store customers in New York State carry Nutco's products (Germack Aff. at ¶11.).

17.     Nutco held the domain registration for the website located at the internet address www.germack.com ("Website"), and advises on some wholesale product content, but does not operate (and has not for about ten years) the online retail shop located on the Website. The online retail shop is operated by the Germack branded Detroit retail store, a completely separate company that manages product listings, owns all the inventory and fulfills all the orders. (Germack Aff. at ¶2(b),¶6").

18.     Nutco is exclusively a wholesale (B2B) business, and has no customer accounts in New York (i.e. no groceries or other food stores carry Germack branded products), no distribution capabilities in New York, and the Website does not permit wholesale transactions.  (Germack Aff. at ¶3, ¶5, and ¶9). As such, content related to Nutco's existing customers or on becoming a wholesale customer (i.e. groceries and other food stores) is generally not relevant to New York State resident website visitors.

19.     The Website is operated by Germack Roasting Company (a completely separate company from Nutco), with content relevant in separate parts to Nutco wholesale customers and to Germack Roasting Company's retail store customers.  (Germack Aff. at ¶2(c) and ¶7). Germack Roasting Company's retail store staff coordinate content, manage product listings, administer the finances, manage inventory, and fulfill orders. (Id at ¶6).

20.     The Website contains informational content about Nutco's wholesale business, informational content about Germack Roasting Company's brick and mortar retail business, and an online retail shop. (Id. at ¶7). Nutco provides to Germack Roasting Company staff, website content related to Nutco's business, including general wholesale account information, products, promotions, images, and catalogs so that it can be loaded onto the Website. (Id.).

21.     The informational content of the Website is Metro-Detroit centric and focuses primarily on the brand's Detroit connection, local happenings, the Germack retail store promotions, neighborhood events, Nutco's wholesale customer (i.e. grocery) promotions, and product information. (Germack Aff. at ¶7).

22.     The Website operator is disclosed in multiple places on the Website, including on the Contact page, and in the shipping information provided during the checkout process.

23.     Nutco and the Website operator provide telephone and email ordering options and other immediate customer service by telephone (six – seven days a week during regular business hours) and email and social media instant messaging 24/7 at the contact information listed on the Website under the Contact page. (Germack Aff. at ¶12). Not all websites have the same level of customer service support for their websites.  Some websites don't have a phone number to call or other means of getting immediate service during business hours.  All websites cannot be put in the same accessibility "box", and that is a good reason why there are no federal standards guiding accessibility for commercial websites.   Nutco and Germack Roasting Company provide superior, multi-channel, customer service.

24.     Sanchez alleges that Nutco has failed, "to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people," and that "Defendant's denial of full and equal access to its website, and therefore denial of its goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA")." (Complaint, at ¶4). According to Plaintiff, visually-impaired customers cannot fully access websites unless they are designed to be read by screen-reading software (Id. at ¶15).  For this software to function, the information on a website must be capable of being rendered into text (Id. at ¶17) so that the screen-reader can read aloud information on a website to a user.

25.     Plaintiff visited Nutco's Website on separate occasions the last time being during the month of November,  using his JAWS screen-reader (an interesting choice – at $90/month this tool is not equally accessible to all blind persons). (Complaint at ¶25).  The Complaint omits how or why Plaintiff landed on the Website, but it's rather obvious that the Plaintiff, a serial plaintiff, is an ADA violations "tester" who never made contact with either Germack company, and is working with an unnamed investigator, who also visited the Website on undisclosed dates to perform tests (Id. at ¶31).

26.     That Plaintiff omitted any details on which pages he visited, what actions he took on the Website, or what was the exact date of the visits.  Nutco cannot even pull a copy of the Website from its November 202 archives that would represent the Plaintiff's visit version of the Website, as the Website was undergoing a development and design overhaul  in stages throughout September-December. (Germack Aff. at ¶14).

27.     After repeated visits, Plaintiff, armed with investigator(s), remarkably thinks that Nutco and the Website sells only pistachios (Complaint at ¶20, ¶23, ¶33); in fact

pistachios are only a handful of and no more prominently displayed than over 300

products that are sold there, including nuts, seeds, trail mixes, chocolates, candies, coffees,

teas, spices, and merchandise. (Germack Aff. at ¶15).

28.     Plaintiff encountered some unnamed links and images that he was unable to

read aloud with his screen-reader (i.e. unable to be rendered into text): missing alternative

text on images (Id. at ¶27), empty links containing no text (Id. at ¶28), redundant links

going to the same URL (Id. at ¶29), and linked images missing alt-text (Id. at 30).  It is not

possible from the Complaint to determine what Website page or content is being

referenced. (Germack Aff. at ¶14).  As a result, Plaintiff asserts that the Website is "not fully

accessible to and independently usable by" vision-impaired persons. (Complaint at¶4,

¶41).

29.     Plaintiff incorrectly asserts as a fact in the Complaint that Defendant is

refusing correct the alleged accessibility barriers. (See e.g. Complaint at ¶23 "Defendant's

refusal to remove access barriers"), as if the Plaintiff had actually requested that the

barriers be removed, which he did not. (Germack Aff. at ¶13).    Plaintiff asserts that the

Defendant is "intentionally discriminating" throughout, while Nutco and the Website

operators have never received a customer complaint that a user's screen-reader was not

working. (Germack Aff. at ¶13). (Screen-readers are a tool of last resort – most vision-

impaired persons are advance in age and could not possible learn how to effectively use

them, and do not use them opting for simple voice recognition tools and personal

assistance.  Only 100,000 downloads have ever been made of the world's most popular

screen-reader, NVDA, according to its website nvacces.org).  The matriarch of the Germack

family is legally blind – after trying many different vision aids, she is not interested in

learning how to use a maddening and complex screen-reader, and opts for simple voice recognition tools and personal assistance.  Nutco and the Website operator would never intentionally discriminate against vision-impaired persons, as the Germack family is well aware of the devastating impact of vision impairments.  In their experience (and for their vision-impaired customers' financial safety) low-vision or legally blind persons much prefer to order over the phone than to try to enter credit card information into a website.

30.     Plaintiff asserts that the Website is a public accommodation to New York State residents under the ADA (Complaint at ¶13), and as such Defendant violated the accessibility requirements of the ADA when Plaintiff was "deterred" from" learning about" and "enjoying pistachios", "because: Plaintiff was unable to determine and or purchase items from its Website, among other things."  (Id. at ¶33).

31.     There are a lot of things that could deter a person living in New York City with no Germack brand awareness, from buying Germack branded pistachios through an out-of-state website at prices higher than New York City standards, and a 5-7 day delivery horizon, when commodity California pistachios can be bought at almost any grocery store and convenience store in New York.  Plaintiff appears to acknowledge this possibility by tacking on "among other things" at his causation discussion in the Complaint (Complaint at ¶33).

32.     Plaintiff is seeking a permanent injunction under the ADA "to cause a change in Nutco's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers." (Complaint at ¶5, ¶39).  Plaintiff seeks a permanent injunction that requires the Defendant to implement certain (but it's unclear from the Complaint which ones) Web Content Accessibility

Guidelines (WCAG) issued by W3C, a nonprofit "think tank" with no actual authority. (Id. at ¶18, ¶36, and ¶39).

33.     Plaintiff is mistaken throughout the Complaint (See, e.g. ¶4, ¶8, ¶12, ¶21) about the nature and extent of Nutco's business operations; Nutco does not conduct any online or other business in New York State. (Germack Aff. at ¶5, ¶6, and ¶9).  At most, Nutco provides through the Website solely informational content that is accessible to New York residents on its wholesale operations and wholesale products.  But, Nutco's products are not relevant or readily available to New York consumers, because Nutco has no New York State customers, no distribution capabilities in New York, and the Website does not permit wholesale transactions. (Germack Aff. at ¶5, ¶9). Nutco's customers cannot do business with Nutco on its Website. There is no wholesale ordering or account opening function on the Website, so Nutco's customers can only read the informational content and send an email inquiry. Wholesale accounts require an approval process. (Germack Aff. at ¶9).

34.     Nevertheless and because Nutco did hold the domain registration for the Website's internet address at the time the Complaint was filed,  Nutco has provided evidence and assurance through the attached Affidavit of its president, Frank Germack, III, that the Website is now and will remain accessible to blind and visually-impaired consumers.  (Germack Aff. at ¶18).

35.     Nutco, in working with Germack Roasting Company's external website developer, has confirmed through automated website accessibility checkers, and a manual free screen-reader tool, that the Website is accessible, operable, and independently usable, and that it complies with the optional WCAG guidelines under 2.0 A, AA (Germack Aff. at

16), the only guidelines adopted by any part of the federal government, and the only guidelines the W3C itself (the author of the guidelines) recommends be adopted for an entire website.  Content required to learn about and enjoy by purchasing pistachios (and all other items) is capable of being rendered into text in order to be read aloud by a screen-reader. (Id.)  Nutco and Germack Roasting Company (both lead, and owned in part, by affiant Frank A. Germack, III) are committed to continue to: (a) provide telephone and email support and ordering options during regular business hours for Website customers, and (b) comply with the WCAG 2.0 A,AA guidelines (or any future guidelines adopted by any part of the federal government), to ensure the web pages, online shop product listings, and checkout processes have content that is capable of being rendered into text by a widely available free screen reader as required for the Website to be accessible and independently usable by blind and vision-impaired persons and to avoid future litigation. (Id. at ¶18).

36.    Nutco (and the Website operator) have implement policies, training, and processes that will ensure that automated website accessibility checkers and manual vision aids are regularly consulted internally by administrative personnel, and externally by their website developer.

37.    Federal agencies handle website accessibility by making a reasonable and good faith effort to comply with WCAG 2.0 A, AA, and requiring persons with accessibility issues to contact the agency directly for assistance.  And that is exactly what Nutco is doing and will continue to do, even though WCAG 2.0 A, AA is not an actual requirement for businesses like Nutco.

PROCEDURAL POSTURE

38.     Plaintiff commenced this suit by filing a summons and complaint with the United States District Court for the Southern District of New York on Defendant Germack Pistachio Company, a dissolved corporation.  Plaintiff filed a First Amended Complaint to correct for that error by naming Defendant, Nutco, Inc., (d/b/a Germack Pistachio Company) the owner of the domain name registration for the internet address where the Website is located.

 LAW AND ARGUMENT.

**Motion to Dismiss Under Fed.R. Civ.P. 12(b)(1) for Lack of Subject Matter Jurisdiction Over Defendant.**

Subject Matter Jurisdiction  - Legal Rules

39.     "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Dureant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62(2d Cir. 2009). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).  A court lacks the judicial power to hear a party's claims when the party does not have standing.  Hillsdale Metro Assocs., LLC v. JPMorgan Chas Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014).  "[t]he task of the district court is to determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." Carter v. Health Port Techs., LLC 822 F.3d 47, 56 (2dCir. 2016).

40.     When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should resolve the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

41.     When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all facts alleged in the complaint." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn."  Buday v. NY Yankees P'ship, 486 F. App'x 894, 895 (2d Cir.2012)(summary order).  Notwithstanding the foregoing, Plaintiff's attorney has a duty to make a reasonable inquiry into the allegations set-forth in the complaint.

42.     <u>Plaintiff's Burden.</u>  Courts may dismiss an otherwise sufficient complaint for lack of subject matter jurisdiction, "when the district court lacks that statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction, 'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" Del-Orden, citing Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). But "jurisdiction must be shown affirmatively" by the plaintiff "and that showing is not made by drawing from the pleading inferences favorable to the party asserting it." Shipping Fin. Servs. Corps. V. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). A plaintiff must show by a preponderance of the evidence that subject matter jurisdiction lies over the dispute.  Makarova, 201 F. 3d at 113.

43.     On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "[the] court may consider evidence outside the pleadings, such as affidavits and exhibits." Del-Orden, citing Makarova, 201 F.3d, at 113.

Standing

44.     The constitutional minimum of standing in federal court requires: (i) an "injury in fact"; (ii) that is "fairly traceable" to defendant's alleged conduct; and, (iii) that is "likely to be redressed" by a favorable decision.  Majia v. Time Warner Cable Inc., 2017 WL 3278926, at 7 (S.D.N.Y. Aug. 1, 2017)(quoting Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560-561 (1992)). To support standing, an injury must be both "concrete and particularized." Spokeo, Inc. v. Robins at 1549).   A "plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." Harty v. Simon Prop. Grp., LP, 428 F.App'x 69,71 (2d Cir. 2011) (summary order).   A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Spokeo, Inc. v. Robins, 136 S. Ct. at 1549.  Further, "a plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." Harty v. Simon Prop. Grp., L.P., 428 F. App'x 69, 71 (2d Cir. 2011)(summary order).

45.     Standing exists in federal court in the instance of a ADA violations lawsuit: where "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and, (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of the defendants' [public accommodation] to plaintiff's home, that plaintiff intended to return to the subject

location." Kriesler v. Second Sve. Diner Corp., 731 F. 3d 184, 187-88 (2d Cir. 2013).

Plaintiffs who encountered accessibility barriers prior to filing their complaints "have

standing to bring claims for injunctive relief if they show a plausible intention or desire to

return to the place but for the barriers to access." Disabled in Action of Metro, N.Y. v. Trump

Int'l Hotel & Tower, 2003 WL 1751785, at 7 (S.D.N.Y. Apr. 2, 2003).  "Whether an ADA

plaintiff intends to return to a place of accommodation is a fact-specific inquiry." Laufer v.

Laxmi & Sons, LLC, 2020 WL 2200207, at 2 (N.D.N.Y. May 6, 2020).  As such, to "maintain an

ADA cause of action seeking injunctive relief to prevent future injury, a plaintiff must allege

facts giving rise to an inference that he will suffer future discrimination by the defendant."

Shaywitz v. Am. Bd. Of Psychology and Neurology, 675 F. Supp. 2d 376, 382 (S.D.N.Y. 2009).

The threat of future injury must be "real and immediate," as opposed to "merely conjectural

or hypothetical." (Id.)

46.     Merely knowing about an accessibility barrier, or being confronted with a

barrier and having difficulty (i.e. being deterred by a barrier) is not sufficient enough to

establish that an injury-in-fact has occurred.  A disabled plaintiff must be actually denied

access to a public accommodation, which requires an assessment of: (a) the plaintiff's

condition; (b) the particular barrier to access; (c) how that barrier caused an injury; (d)

what type of injury was suffered; and, (e) how he is likely to be discriminated against in the

future.

47.     A person's status as an ADA violations "tester" is not sufficient to establish a

basis for Article III standing.  See Feltzin v. Stone Equities, LLC, 2018 WL 1115135, at

9 (E.D.N.Y. Feb. 8, 2018) ("[I]t is clear that an ADA tester must still satisfy the Article III

standing prerequisites.").  See Owen Harty v. West Point Realty, Inc. (finding no standing to

sue for a "tester" who pleaded details insufficient to establish an injury-in-fact).  The facts must support a finding that a tester (or some other plaintiff similarly providing scant details like Sanchez) would suffer future harm from being prevented from accessing a defendant's location, and in the federal courts that usually involves a situation where a website has connectivity to brick and mortar stores proximate and plausibly useful to the Plaintiff.  (See, e.g. Gomez v. General Nutrition Corp. (11th Cir. 2018)(Nutco's situation is distinguishable and quite the opposite from GNC's, who had a website interconnected to brick and mortar stores proximate to the tester Plaintiff that by their nature and proximity the Plaintiff may plausibly intend to use in the future.)  In Camacho v. Vanderbilt University for example, a court concluded that a disable person alleged a concrete injury by claiming he wished to attend a four year college.  (See also, Camacho v. Vanderbilt University 2019 WL 6528974 at 10 (S.D.N.Y. Dec 4, 2019)(Plaintiff was an actual potential student who couldn't access information on Vanderbilt's website.).

48.     Further, it is well-established in the federal court system and the Second Circuit that a plaintiff must have experienced an ADA violation himself, knowledge is not enough.

Application

49.     Plaintiff Sanchez's Complaint allegations, even accepted as true, fail to establish the existence of a present injury in fact, nor the existence of a real threat of future injury, and therefore Plaintiff fails to establish Article III standing.  Himelda Mendez v. Apple, Inc. 18 Civ. 7550 (S.D.N.Y. 2019);  Owen Harty v. West Point Realty, Inc. 19 CV 880 (S.D.N.Y. 2020). (finding that scant and vague details provided by plaintiffs who are

admitted and implied ADA violation website testers fail to establish that plaintiffs are plausible past or future customers eligible for protection under the ADA.)

50.     Plaintiff pleaded no injury in fact because the (a) Plaintiff is not a plausible customer, now or in the future, and is not eligible for protection under the ADA; (b) Plaintiff pleaded no reasons or general intention to revisit the Website in the future, but for the barriers;  (c) Plaintiff alleges that the Website is a public accommodation, but failed to make the requisite contact with the Defendant to request assistance (i.e. a reasonable accommodation) with any accessibility barriers prior to initiating his lawsuit; and, (d) the pleaded injuries lack all requisite specificity.

51.     <u>Not a Plausible Customer.</u>  Plaintiff is a website tester and not a plausible past or future consumer, and as such is not eligible for protection under the ADA.  Owen Harty v.West Point Realty, Inc. (19CV 8800) S.D.N.Y. 2020)(finding no plausible reason why an admitted ADA violations website tester would visit a website again as a customer).  Plaintiff is a serial plaintiff, suing more consumer websites in two years than most people would patronize over a lifetime, not a person who wants to do business with Nutco or the Website.  The allegations in the Complaint from Plaintiff, an ADA violations tester with no plausible or logical connection to Nutco or the Website, no local brick and mortar access to any of Nutco's products, and no activity demonstrating that he is a plausible customer, are bare allegations of an ADA violation with no associated concrete harm or injury in the past and no likelihood of discrimination into the future. Plaintiff has pleaded no behavior remotely typical of a customer:  (a) he is working with an investigator; (b) he never took any logical customer steps on the Website, like attempting to search for products, attempting to add items to his shopping cart, or attempting to checkout (there is nothing in

the Complaint that alleges the search feature, the "add to cart" buttons, and the "checkout" buttons were inoperable); and, (c) he has demonstrated no logical connection to the local Detroit Germack brand, or no knowledge about Nutco's business or the Website (he thinks they both sell only pistachios).  That there was no communication by the Plaintiff before suing, is further evidence that there is no intention to be a customer. Plaintiff a blind person who lives in New York, has no logical or personal connection to Nutco's local Detroit Germack brand.  There is no reason for an out-of-state person with no affinity to the Germack brand, to buy and wait for commodity grocery products at prices and wait times far exceeding a purchase for local delivery, or a trip to a local grocery or convenience store for the same type of California pistachio product.  Further, Plaintiff has no demonstrated intention to actually purchase a product either directly from Nutco, or off the Website either in the past or the future.  Along with the fact that the Plaintiff was already deterred from shopping the Website, Plaintiff has not ever made contact with Nutco or the Website operator, and has not attempted to make any purchase from either up to this point.  As such, there is no plausible consumer oriented reason why Plaintiff, merely an out-of-state website tester with other websites to move onto and sue, would plan on patronizing Nutco and or revisiting the out-of-state Website offering grocery store products in the future to learn even more about Nutco's pistachios, or to make a pistachio (or other) purchase.

52.   <u>Failed to Request a Reasonable Accommodation</u>.  Plaintiff asserts that vision-impaired persons should be able to "independently" operate a computer to shop at a grocery store on the internet using just a screen-reader (First Amended Complaint ("Complaint" at ¶4, 15)). Yet, a vision-impaired person cannot independently shop at a grocery store without asking for assistance.  Not being able to shop independently is not an

injury under the ADA, it is a fact of life for a vision-impaired person.  In fact, The ADA requires vision-impaired persons to seek assistance (i.e request an accommodation) and modify their own behavior when shopping.  A vision-impaired person requiring help in a grocery store must be patient, find a store employee, request assistance, and allow the employee to locate and identify items for him.  (ada.gov Lesson One – Reaching Out to Customers With Disabilities)(disabled person in wheelchair must seek assistance to access items on out-of-reach shelves).  On principle, why would an internet shop be any different? Nutco and the website operator provide immediate employee assistance for the Website during regular business hours, and even offers phone and email ordering options, which comports with ADA guidance. (Id.) ("The ADA does not spell-out what you [a store operator] should do in every situation – it lets you decide what is reasonable based on how your business operates and what kind of accommodation a person needs.".

53.     It is not entirely clear that the Website is a public accommodation in New York for purposes of the ADA as federal courts are divided on this issue, but even if it is, discrimination can only occur when a disabled person is actually denied the full and equal enjoyment of a public accommodation.  Marett v. Five Guys Enterprises LLC (S.D.N.Y. July 21, 2017)(finding a website only, with no physical location, is a public accommodation). Accepting as the Plaintiff asserts that the Website may be found to be a public accommodation in New York, federal courts consistently require a disabled person to first make a request for a reasonable accommodation when encountering accessibility barriers, before initiating a legal proceeding under Title I, and Plaintiff made no such request.  A customer who wants additional assistance cannot expect the business to read his mind and know he secretly wanted a particular accommodation and then sue the business for not

providing it.  Imagine a person walking into a grocery store, not being able to access the

pistachios on a shelf, not telling anyone, and then suing the grocery store over it.  We can all

agree, that person's experience would not be a legitimate ADA lawsuit. How is this case any

different?  Because Plaintiff never contacted the Defendant regarding his alleged

accessibility issues, he makes bald assertions that Nutco was intentionally discriminating

or refusing to remedy alleged accessibility issues.  Because Plaintiff never reached out the

Nutco for assistance with its Website accessibility issues, it cannot now sue Nutco for any

Website accessibility issues, or for refusing to provide that assistance. Further, the

Defendant unfairly had no chance to learn what barriers the Plaintiff encountered, and

attempt remedy any of the Plaintiff's accessibility issues in advance of the lawsuit.

54.    <u>Lacks Requisite Specificity</u>.  Plaintiff has not pleaded sufficient details to

establish an injury that is both concrete and particularized; the pleaded injuries lack all

required specificity. Himelda Mendez v. Apple 18 Civ.7550, 4 (S.D.N.Y. 2019)(omission of a

date of visit, and scant details about the reason for and experience of plaintiff's visits to

defendant's website and store result in a finding of lack of specificity; case dismissed under

Fed. R. Civ. P. 12(b)(1)).  Cf. Lawrence Feltzin v. Triangle Properties #1, LLC 14-CV-5131 at

10 (E.D.N.Y. Dec. 15, 2016)(finding plaintiff provided no details at all concerning any

instance in which he allegedly encountered a violation.)

a.    The Complaint throughout suffers from an intentional lack of "plain

English", specifics, or any semblance of a narrative than can provide insight into the

Plaintiff's Website experience.  The complete lack of details in the Complaint leaves

one to wonder throughout what the Plaintiff is even referring to, whether the

Plaintiff even visited the Website, and how to even respond to such vague

24

allegations.  And, that, in a Germack nutshell, is how it becomes apparent that the Plaintiff has pleaded injuries that lack all required specificity.

       b.     There are no details in the Complaint that describe any of the Plaintiff's actual movements around the Website (what buttons he clicked, what fields he entered, what pages he visited, whether he added items to his shopping cart).

       c.     Respectfully, the Plaintiff's allegation of his [required] injury and the related direct cause is simply not understandable. Plaintiff asserts that the Website is a public accommodation to New York State residents under the ADA (Complaint at ¶13), and as such Defendant violated the accessibility requirements of the ADA when Plaintiff was "<u>deterred</u>" from" learning about" and "enjoying pistachios", "because: Plaintiff was unable to determine <u>and or</u> purchase items from its Website, <u>among other things</u>."  (Id. at ¶33). Plaintiff  has pleaded a vague and unidentifiable list of barriers without identifying the barrier(s) that caused the Plaintiff to be "deterred".  Plaintiff has not established as is required that he was in fact denied access to certain Website content that made the Website unusable / inoperable because of a specific accessibility barrier.  "Deterred" is an unfortunate and ambiguous choice of words as it can mean on a spectrum either discouraged or prevented from acting. (Dictionary at lexico.com).  Similarly, with the use of "and or" and "among other things", Plaintiff is suggesting alternative causes, with the possibility that the true cause was some "other things" outside of the Complaint itself.  Importantly, nowhere in the Complaint does Plaintiff indicate in "plain

English" that Plaintiff was in fact unable to browse web pages, browse pistachio product listings, add items to his cart, and checkout (nor are we told he even tried).

   d. As the basis of his Complaint, Plaintiff incorrectly analogizes that his screen-reader test is determinative of whether or not the Website is accessible.  A user's screen-reader experience is dependent on the user's training, browser, hardware, software, and other vision aids. (Sheri Byrne-Haber, <u>Accessibility Best Practices for Screen-Reader Testing</u>, www.medium.com). ("Each screen reader has an entirely different set of gestures and keyboard commands that can be used by the user to enable interaction."  There are about "40" screen-readers available on the market.  Everything from the chosen browser and operating system, to the chosen hardware can affect performance.  Screen-readers are just one of a suite of vision aids a legally blind person typically employs. ) As such, Nutco cannot be liable under the ADA for all website accessibility issues experienced by screen-reader users.

   e. Further, Plaintiff incorrectly analogizes that his screen-reader experience is determinative of whether a website complies with the WCAG guidelines. (powermapper.com <u>Techniques for WCAG 2.0 and 2.1 Screen Reader Compatibility</u>) (finding JAWS screen-reader, the type used by the Plaintiff, was 76%-87% compatible with all WCAG guidelines under 2.0 and 2.1, depending on the version and the browser used).  As such, Plaintiff has not established that the Website does not comply with the only guidelines the W3C recommends be adopted for an entire website, WCAG 2.0 A, AA, because he is applying the incorrect guideline in drawing his conclusion.  Importantly, anyone so vision-impaired as to require a last resort vision aid screen-reader will be using other vision aids in concert, like

voice recognition, magnifiers, Braille readers, a complements. (w3.org Web Content Accessibility Guidelines Overview).  Notably, Sec. 508 of the Rehabilitation Act, that applies to federal agencies and others (See discussion at (f.) below), exempts accessibility tools like screen readers from WCAG 2.0 A, AA compliance requirements.

    f.  Plaintiff incorrectly applies the WCAG website accessibility guidelines to the Website for purposes of concluding the Website is not accessible and for purposes of the injunction requirements sought.  Plaintiff incorrectly asserts that Defendant should comply with WCAG 2.1 guidelines in connection with the permanent injunction. (Complaint at ¶18, ¶36, and ¶39).  WCAG 2.0 and 2.1 are referred to separately, potentially erroneously, throughout the Complaint causing confusion as to what guideline Plaintiff is indicating applies.  WCAG 2.0 has three levels (each new level adding more guidelines, AAA being the most): A, AA, AAA. Plaintiff never refers to any level in the Complaint. Further, WCAG 2.1 <u>adds to</u>, it does not supersede, WCAG 2.0. (w3.org <u>Web Content Accessibility Guidelines 2.0 Overview</u>).  WCAG 2.1 has not been adopted by any part of the federal government, and WCAG 2.0 and 2.1 are not required at all for commercial businesses.  ((Sec. 508 of the Rehabilitation Act standards under Appendix A incorporate by reference the WCAG 2.0 A, AA as requirements for certain public facing electronic documents produced by federal agencies and businesses using federal agencies, including generally a "web page")(29 U.S.C. 794(d)).  Plaintiff has pleaded applying the incorrect WCAG guideline throughout ((of WCAG 2.0 (without a corresponding level) and 2.1)), thereby failing to assert any evidence that the Defendant's Website

27

is in fact not in compliance with the only guidelines expressly recommended by the W3C, and adopted by any part of the federal government (WCAG A, AA)(and therefore routinely considered by federal courts as evidence that a website is accessible).

g.      Plaintiff asserts that "most large corporations and government agencies" have adopted 2.1 guidelines, so Nutco should too (Complaint at ¶18); Nutco and the website operator are small family owned businesses with the entire Website operated day-to-day by three part-time employees (a retail manager, a graphics intern, and a shipping clerk).  (Importantly, The ADA requires consideration of the size and scale of a business when making a determination of what accommodations are reasonable and therefore required – another good reason why the extensive WCAG guidelines are not required for commercial businesses).

h.      Compliance with the WCAG guidelines is not necessary (or even possible in some cases) for a website to be accessible.  It is "simple" to comply with the WCAG guidelines Plaintiff indicates (Complaint at ¶36).  Yet, importantly, even the W3C, the organization issuing the WCAG, has advised against requiring compliance with any level beyond 2.0 AA for "entire [web]sites because it is not possible to satisfy [meaning all level 2.0 AAA, and thus it follows all of 2.1] success criteria for some content."(w3.org,  Understanding WCAG 2.0).  Accessibility is not so much about each and every guideline, as it is about having a goal (e.g. a corporate policy) that a website is usable for a vision-impaired person. (Id.)(Making websites "often more usable" is a primary goal of WCAG 2.0 and a tacit acknowledgement that at times the 2.0 guidelines do not make web content more usable.)  In fact, the

28

Defendant's website developer spent over 70 hours addressing WCAG automated checker "errors", and the Defendant and the developer determined many of these "error" codes did not make the website any more usable for a visually-impaired person using a NVDA free screen-reader-the screen-reader was already converting every bit of required content into text) (The automated accessibility checkers are not consistent in their WCAG "error" reports, but all make subjective conclusions around whether content might be redundant or confusing, etc. that nonsensically in some cases drive down a website's estimated compliance "score" for that checker. One example of this is, an automated checker found certain website header labels potentially confusing even though to a user they were abundantly clear-the website developer changed the labels simply to clear out the erroneous error codes).

**Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction Over Defendant.**

<u>Under 12(b)(1) On Grounds of Mootness.</u>

55.     Article III, § 2 of the United States Constitution limits the jurisdiction of the federal courts to matters that present actual "cases and controversies," therefore, "an actual controversy must be extant at all stages of review." Del-Orden v. Bonobos, Inc., No. 17 Civ. 2744 (PAE) (SDNY Dec. 20, 2017), quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during litigation, the action can no longer proceed and must be dismissed as moot." Genesis, 569 U.S., at 72. B. The voluntary cessation of wrongful behavior may render a case moot "if the defendant can demonstrate

that (i) there is no reasonable expectation that the alleged violation will recur and (ii) interim relief events have completely and irrevocably eradicated the effects of the alleged violation." Clear Channel 594 F.3d at 110 (quoting Campbell v. Greisberger, 80 F.3d 703, 706(2d Cir. 1996). To "maintain an ADA cause of action seeking injunctive relief to prevent future injury, a plaintiff must allege facts giving rise to an inference that he will suffer future discrimination by the defendant." Shaywitz v. Am. Bd. Of Psychology and Neurology, 675 F. Supp. 2d 376, 382 (S.D.N.Y. 2009).  The threat of future injury must be "real and immediate," as opposed to "merely conjectural or hypothetical." (Id.)

56.      Defendant has provided sufficient evidence from its internal and external accessibility review using both a manual screen-reader vision tool (NVDA, the world's most popular free screen-reader) and multiple automated accessibility checkers (see support attached as exhibits to Frank Germack's Affidavit)  to establish that the Website is " Nutco, in working with Germack Roasting Company's external website developer, has confirmed through automated website accessibility checkers, and a manual free screen-reader tool, that the Website is accessible, operable, and independently usable, and that it complies with the optional WCAG guidelines under 2.0 A, AA (Germack Aff. at 16), the only guidelines adopted by any part of the federal government, and the only guidelines the W3C itself (the author of the guidelines) recommends be adopted for an entire website.  Content required to learn about and enjoy by purchasing pistachios (and all other items) is capable of being rendered into text in order to be read aloud by a screen-reader. (Id.)  Nutco and Germack Roasting Company (both lead, and owned in part, by affiant Frank A. Germack, III) are committed to continue to: (a) provide telephone and email support and ordering options during regular business hours for Website customers, and (b) comply with the

WCAG 2.0 A,AA guidelines (or any future guidelines adopted by any part of the federal government), to ensure the web pages, online shop product listings, and checkout processes have content that is capable of being rendered into text by a widely available free screen reader as required for the Website to be accessible and independently usable by blind and vision-impaired persons and to avoid future litigation. (Id. at ¶18).

57.     Nutco (and the Website operator) have implement policies, training, and processes that will ensure that automated website accessibility checkers and manual vision aids are regularly consulted internally by administrative personnel, and externally by their website developer.

58.     The court lacks subject matter jurisdiction over the Defendant, because the Plaintiff's claim has been mooted by Defendant's remediation efforts, and accordingly the court must dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1). Edwin Diaz v. The Kroger Co. 18 Civ. 7953(S.D.N.Y. 2019).


**Motion to Dismiss Under Fed.R. Civ.P. 12(b)(2) for Lack of Personal Jurisdiction Over Defendant.**

<u>Under 12(b)(2) On Grounds That Defendant Conducts No Business in New York.</u>

59.     <u>Legal Rules.</u>  "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.1996). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Eades v. Kennedy, PC

Law Offices, 799 F.3d 161, 167-68 (2d Cir. 2015) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013)). The plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir.1996). Where a court does not hold an evidentiary hearing on the jurisdictional question, if may nevertheless, consider matters outside the pleadings. Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A., 722 F3.d 81, 86 (2d Cir. 2013).

60.     "Once a defendant has raised a jurisdictional defense on a Rule 12(b) motion to dismiss, the plaintiff bears the burden of proving sufficient contacts with the relevant forum to establish jurisdiction over each defendant." Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012). It is well-established that "in deciding a pretrial motion to dismiss for lack of jurisdiction a district court has considerable procedural leeway" and it "may determine the motion on the basis of ... affidavits alone." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (citation omitted). In the instant case, Plaintiff amended his initial complaint after learning from the Defendant that it did not operate the Website, and did not conduct any business or have any customer accounts in New York, without correcting the related mistakes in the initial complaint (See, e.g. Complaint at ¶4, ¶8, ¶12, ¶20, ¶21, ¶22, ¶41).

61.     Under New York's long-arm statute, a court may exercise personal jurisdiction over a non-domiciliary if (i) the non-domiciliary transacts business in New York State; and (ii) the claims against the non-domiciliary arise out of that business activity. See Aquiline Capital Partners LLC 861 F. Supp. 2d at 386.

62.     A defendant "transacts business" in New York for purposes of the long-arm statute when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law." Family Internet, Inc. v. Cybernex, Inc., No. 98 Civ. 0637(RWS), 1999 WL 796177, at 5 (S.D.N.Y. Oct. 6, 1999) (internal quotations omitted); see also, Best Van Lines, 490 F.3d at 246.

63.     Even if state law allows for the exercise of personal jurisdiction over a non-domiciliary, the court must also determine whether the exercise of jurisdiction under state law would satisfy federal due process requirements. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir.1999); Big Apple Pyrotechnics & Multimedia Inc., 2007 WL 747807, at 2. "Due process requires that a non-resident defendant have 'certain minimum contacts [with the forum] ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Marsalis v. Schachner, No. 01 Civ. 10774(DC), 2002 WL 1268006, at 4 (S.D.N.Y. June 6, 2002) (quoting U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 145, 152 (2d Cir.2001)).

64.     A non-domiciliary of the State of New York, with no physical locations in New York, but owning and operating a "highly interactive" website, has been considered by the Second Circuit to be conducting business in New York under the long-arm statute, but only with respect to the actual shipping activity into New York associated with the claim.  Chloe v. Queen Bee of Beverly Hills, LLC 616 F.3d 158 (2d Cir. 2010) (finding personal jurisdiction over an out-of-state defendant with no physical locations in New York with respect to a highly interactive website and a website transaction involving counterfeit product sold online and shipped into New York).  Queen Bee of Beverly Hills' website was highly interactive (i.e. evidence that Queen Bee purposely avails itself of the privilege of

conducting activities in New York) because at least in part (and upon review of the website) it offers ongoing contractual customer accounts: (i) reoccurring auto-ship monthly subscriptions; and. (ii) wholesale drop-ship programs.  Importantly, the court in Chloe v. Queen Bee disregarded shipping activity that was not related to the plaintiff's claim in its analysis.  But for the shipping of counterfeit goods into New York, Queen Bee of Beverly Hills, an out-of-state-defendant with no physical locations in New York, would not have been found to be doing business in New York. (Id.) That Nutco's Website does not offer reoccurring sales contracts of any kind to anyone is a distinguishing factor.  Further, the fact that Queen Bee of Beverly Hills was selling rare, luxury designer handbags, a category with logical appeal to New York City residents, (and not commodity grocery items like Nutco produces for the Website) is a distinguishing factor.  Additionally, the fact that Nutco does not ship any goods into New York, and that the Website does not offer ongoing contractual arrangements like subscriptions or drop ship, and that the Website did not ship any goods into the State of New York relevant to Plaintiff's claim, are distinguishing factors. (Id.)

65.    Plaintiff must "establish[] a reasonable probability that [the Website has] been "actually used [by the defendant] to effect commercial transactions with customers in New York." See Alibaba Grp. Holding Ltd. v. Alibabacoin Found., No. 18 Civ. 2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018). "[T]he existence of an interactive patently commercial website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." Id.

66.     Website content that is informational in nature only is not sufficient to confer personal jurisdiction in New York.  A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011).

67.     A Website that contains an online shop is not doing business in New York State if the online shop cannot be used by New York residents.  Edwin Diaz v. The Kroger Co. (18 Civ 7953), at 16 (S.D.N.Y. 2019) ((finding lack of personal jurisdiction over a grocer (with no physical locations in New York) who operated a website that was accessible to New York residents, but the retail shop located on the website was not available to New York State customers because there were no delivery services into New York)).

68.     Application.  Plaintiff has knowingly made bald and incorrect assertions that Nutco is doing business in New York absent any evidence or support, and has not met its evidentiary burden.  Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012)(finding the burden is on the plaintiff to provide evidence that the defendant is doing business in New York for personal jurisdiction purposes). Nutco, a Michigan corporation, with no physical locations in New York, no customer accounts in New York, no sales to New York residents, no distribution capabilities in New York, no Website sales to New York, and no Website shipments into New York, is not doing business in New York under the long-arm statute. Edwin Diaz v. The Kroger Co. 18 Civ 7953 (S.D.N.Y. 2019) (finding that a non-domiciliary with no physical locations in New York, and a Website with only informational content usable by New York residents, does not conduct business in New York).  The Website does not permit Nutco's customers to make purchases; Nutco merely provides informational content for a Website that is operated by another company and that is not rise to the level of conducting business. (Id.) See also New York.  A.W.L.I. Grp., Inc. v. Amber

Freight Shipping Lines, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011)(finding that informational content alone does not constitute doing business).  The Website content while accessible to New York residents is not relevant to New York residents because Nutco customers cannot place orders on the Website, and Nutco has no customer accounts or distribution capabilities in New York.  Further as a website tester, Plaintiff is not an actual or plausible customer now or into the future and is not making any claim (e.g. product liability claim) related to any item produced by Nutco or shipped by Germack Roasting Company into New York associated with the Website, or otherwise with respect to a business transaction with the Defendant.  Nutco is not doing business in New York and the Plaintiff's claim does not arise from the business activity of the Defendant in New York, and consequently, this court lacks personal jurisdiction over the Defendant under the New York long arm statute. To exercise personal jurisdiction over the Defendant who has no contacts with the State of New York would violate its due process rights.  This court must dismiss this action under Fed. R. Civ. R. 12(b)(2) for lack of personal jurisdiction.  Edwin Diaz v. The Kroger Company 18 Civ 7953 (S.D.N.Y. 2019).