UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **CHRISTIAN SANCHEZ, on behalf of himself and all others similarly situated,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Case No. 1:20-cv-10107-JPO** |
| **v.** | : | |
| | : | |
| **NUTCO, INC.** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**

**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 1

    A.  Plaintiff's Allegations Regarding The Website Are Frivolous ............................... 1

    B.  Plaintiff's Allegations Regarding Defendant's Contacts With New York Are Unsupported and Plainly False ............................................................................................. 5

    C.  The Website Is Fully Accessible To Blind and Visually-Impaired Users ............................ 5

III.  PROCEDURAL POSTURE ....................................................................................... 8

IV.  LAW AND ARGUMENT .......................................................................................... 8

    A.  Legal Standard Under Rule 12(b)(1) .................................................................... 8

    B.  Plaintiff has not alleged or suffered a concrete and particularized injury in fact ................. 9

    C.  Plaintiff failed to establish a real and immediate threat of future injury ........................... 12

    D.  The Full Remediation of the Website Renders Plaintiff's Claims Moot ........................... 14

    E.  Legal Standard Under Rule 12(b)(2) .................................................................. 16

    F.  This Court Does Not Have Personal Jurisdiction Over Defendant ..................................... 19

    G.  Defendant Does Not Own or Operate The Website, Therefore Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted ....................................................................... 21

V.    CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
   828 F. Supp. 2d 557 (E.D.N.Y. 2011) ...................................................................19

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
   No. 18 Civ. 2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018)................................19

*Andersen v. North Shore Long Island Jewish Healthcare System's Zucker Hillside*
   *Hosp.*,
   No. 12-1049, 2013 WL 784391 (E.D.N.Y. Jan. 23, 2013) ......................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................9, 21

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   171 F.3d 779 (2d Cir.1999)........................................................................17

*Bebry v. ALJAC LLC*,
   954 F. Supp.2d 173 (E.D.N.Y. 2013) ............................................................22

*Carter v. Health Port Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016)..........................................................................8

*Castillo v. John Gore Organization, Inc.*,
   2019 WL 6033088 (E.D.N.Y. Nov. 14, 2019)......................................................13

*Chloe v. Queen Bee of Beverly Hills, LLC*
   616 F.3d 158 (2d Cir. 2010)........................................................................18

*Clear Channel Outdoor, Inc. v. City of New York*,
   594 F.3d 94 ..........................................................................................15

*Cortez v. National Basketball Ass'n.*,
   960 F. Supp. 113 (W.D. Tex. 1997) (dismissing ADA claim against the NBA
   because it did not own or operate the venues where NBA games were played) ...................22

*Cortlandt Street Recovery Corp. v. Hellas Telecomm.*,
   790 F.3d 411 (2d Cir. 2015)..........................................................................9

*Del-Orden v. Bonobos, Inc.*,
   No. 17 Civ. 2744 (PAE) (SDNY Dec. 20, 2017)..................................................15

*Del-Orden v. Bonobos, Inc.*,
   No. 17-CV-2744 (SDNY Dec. 20, 2017) ..............................................................1

*Diaz v. Kroger Co.*,
  Case No. 18-CV-7953, 2019 WL 2357531 (S.D.N.Y. June 4, 2019)...................14, 16, 19, 20

*Disabled in Action of Metro, N.Y. v. Trump Int'l Hotel & Tower*,
  2003 WL 1751785 (S.D.N.Y. Apr. 2, 2003)...........................................................................13

*Dominguez v. Banana Republic, LLC*,
  No. 1:19-CV-10171-GHW, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) ...........................12

*Dominguez v. Grand Lux Cafe LLC*,
  No. 19-CV-10345 (MKV), 2020 WL 3440788 (S.D.N.Y. June 22, 2020) ...........................13

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)...................................................................................................16

*Eades v. Kennedy, PC Law Offices*,
  799 F.3d 161 (2d Cir. 2015).................................................................................................16

*Family Internet, Inc. v. Cybernex, Inc.*,
  No. 98 Civ. 0637(RWS), 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ....................................17

*Feltzin v. Stone Equities, Inc.*,
  2018 WL 1115135 (E.D.N.Y. Feb. 8, 2018)........................................................9, 10, 12, 13

*Feltzin v. Triangle Props. #1 LLC*,
  No. 14-cv-5131, 2016 WL 11599264 (E.D.N.Y. Dec. 15, 2016)........................................9, 10

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013)...............................................................................................................15

*Guglielmo v. Nebraska Furniture Mart, Inc.*,
  Case No. 19-CV-11197, 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) ...............................15

*Harty v. Nyack Motor Hotel Inc.*,
  No. 19-CV-1322 (KMK), 2020 WL 1140783 (S.D.N.Y. Mar. 9, 2020)................................11

*Hillsdale Metro Assocs., LLC v. JPMorgan Chas Bank, Nat'l Ass'n*,
  747 F.3d 44 (2d Cir. 2014)......................................................................................................8

*Hurley v. Tozzer, Ltd.*,
  No. 15 Civ. 2785, 2018 WL 1872194 (S.D.N.Y. Feb. 2, 2018) ............................................13

*Landmark Ventures, Inc. v. Wave Sys. Corp.*,
  513 F. App'x 109 (2d Cir. 2013) ..........................................................................................21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013)..................................................................................................16

*Marsalis v. Schachner*,
 No. 01 Civ. 10774(DC), 2002 WL 1268006 (S.D.N.Y. June 6, 2002)...................................17

*Mendez v. Apple Inc.*,
 No. 18 Civ. 7550, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019) ...........................................14

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
 84 F.3d 560 (2d Cir.1996).....................................................................................................16

*Minholz v. Lockheed Martin Corp.*,
 227 F.Supp.3d 249 (N.D.N.Y. 2016) .......................................................................................2

*Murphy v. Little Caesar Enters., Inc.*,
 No. 19 CIV. 10329 (LGS), 2020 WL 3318279 (S.D.N.Y. Jun. 18, 2020) .............................12

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
 457 F.3d 963 (9th Cir. 2006) .................................................................................................22

*Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*,
 896 F.2d 674 (2d Cir. 1990)....................................................................................................8

*Sanchez v. USA Wine & Spirits, Inc.*,
 21-CV-01797 (S.D.N.Y. March 2, 2021) .................................................................................3

*Schwartz v. HSBC Bank USA, N.A.*,
 No. 14-CV-9525, 2017 WL 2634180 (S.D.N.Y. June 19, 2017) ...........................................12

*Shaywitz v. Am. Bd. Of Psychology and Neurology*,
 675 F. Supp. 2d 376 (S.D.N.Y. 2009)....................................................................................15

*Sikhs for Justice v. Nath*,
 893 F. Supp. 2d 598 (S.D.N.Y. 2012)................................................................................16, 19

*Small v. Gen. Nutrition Cos., Inc.*,
 388 F. Supp. 2d 83 (E.D.N.Y. 2005) .....................................................................................12

*Sosa v. Zara USA, Inc.*,
 No. 19 CIV. 10958 (LGS), 2020 WL 3318210 (S.D.N.Y. Jun. 18, 2020) .............................12

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)..........................................................................................................8, 9

*Thorne v. Bos. Mkt. Corp.*,
 No. 19-CV-9932 (RA), 2020 WL 3504178 (S.D.N.Y. Jun. 29, 2020)....................................12

*Van Praagh v. Gratton*,
 993 F. Supp. 2d 293 (E.D.N.Y. 2014) .....................................................................................5

*West v. Five Guys Enters., LLC*,
    No. 15-cv- 02845 (JPO), 2016 WL 482981 (S.D.N.Y. Feb. 5, 2016) ...................................14

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000).............................................................................................8

## I.      INTRODUCTION

NUTCO, Inc. d/b/a Germack Pistachio Company ("Nutco" or "Defendant") is a small, Germack family-owned business and snack food (specializing in roasted nuts) processor, wholesaler, and local distributor established in 1924 in Detroit, Michigan. Defendant Nutco produces goods under the Germack brand and logo. Plaintiff, Christian Sanchez alleges he is a legally blind New York resident who claims to have browsed and attempted to transact business on www.germack.com ("the Website") in order to purchase pistachio nuts and other unspecified snack foods because the Website was "not compliant with the current ADA accessibility standards…" Sec. Am. Complaint ¶4.

Plaintiff alleges that Defendant owns and operates the Website, and has failed, "to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people," and that "Defendant's denial of full and equal access to its website, and therefore denial of its goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ('ADA')." *Id*. ¶¶3-4, 14. Plaintiff alleges that visually-impaired users of the Website are denied full access because of incompatibilities between the Website and Plaintiff's choice of screen-reading software, Job Access With Speech ("JAWS"). *Id*. ¶18.

## II.      BACKGROUND

### A.  Plaintiff's Allegations Regarding The Website Are Frivolous.

Defendant does not own or operate the Website, and it last operated the Website ten years ago when Germack Roasting Company, LLC was created to run all Germack-branded retail operations. Exhibit 1, Affidavit of Lori Davis, Director of Sales and Marketing for Defendant, ¶6.[1]

---

[1] In reviewing a Rule 12(b)(1) and/or 12(b)(2) motion to dismiss for lack of subject matter or personal jurisdiction, a court may consider evidence outside the pleadings, such as affidavits and exhibits. *Del-Orden v. Bonobos, Inc*., No.

Defendant provides content for the wholesale section of the Website, but the Website is not capable of accepting wholesale orders from retail users and cannot be used to create a wholesale account. *Id*. ¶9. Defendant does not collect any website sales, perform any website shipping or pay any website expenses. Its customers are wholesale customers (grocers, convenience stores, other food resellers) that receive discounted wholesale pricing on caseload quantities not available on the Website. Defendant's wholesale customers may use the site to learn basic company information, submit contact information, view product catalogs, and explore product photos and descriptions. However, Defendant offers <u>no</u> wholesale pricing, wholesale order forms, wholesale customer ordering functionality, or wholesale customer account opening features on the Website. Instead, Defendant's wholesale customers must go through an off-line approval process which includes a credit check. *Id*.

Other than the foregoing wholesale section of the Website, which is undisputedly irrelevant to Plaintiff's retail browsing and attempted transactions allegations, the Website is owned and operated (sales revenue, expenses, inventory, shipping, product listings and other content) by non-party Germack Roasting Company, LLC. *Id*. ¶6. Defendant is not involved in the customer facing design, construction, maintenance or operation of the Website, and this dispositive fact is not plausibly disputed by Plaintiff. Exhibit 2, Affidavit of Frank Germack, III, President of Defendant, ¶6.

Defendant Nutco produces and wholesales Germack branded nuts, seeds, trail mixes, dried fruit and chocolates and operates a factory and warehouse in Detroit, Michigan. (Germack Aff. at ¶2(a)). Germack Roasting Company produces Germack branded coffee, and operates the website

---

17-CV-2744 (SDNY Dec. 20, 2017), *citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (subject matter jurisdiction); *Minholz v. Lockheed Martin Corp*., 227 F.Supp.3d 249, 255 (N.D.N.Y. 2016) (personal jurisdiction).

and a Germack branded retail building in Detroit, Michigan. (Germack Aff. at ¶2(b)). The website has content related to Nutco and Germack Roasting Company operations, and sells products that originate from both companies and are owned, inventoried, sold and shipped by Germack Roasting Company. (Germack Aff. at ¶6).

Plaintiff alleges he browsed and attempted to transaction business at www.germack.com ("Website") on unidentified dates between November 2020 and April 2021 while using a JAWS screen-reader (Sec. Am. Complaint at ¶¶5-6, 27). He alleges that certain accessibility barriers prevented him from purchasing pistachio nuts on the Website. *Id*. ¶5. Despite this being the third iteration of his Complaint, however, Plaintiff still fails to set forth factual allegations sufficient to show he is entitled to relief. Plaintiff's Second Amended Complaint continues to rest only upon a formulaic recitation of the elements of his claims and conclusory assertions of barriers that either he, or an unidentified investigator, encountered on unidentified pages of the Website.

Formulaic conclusory pleadings are nothing new for this Plaintiff. In the past six months, he has filed **183 complaints** in this Court alone alleging ADA Title III denial of access to commercial websites. See Exhibit 3, Litigation Analytics Report. Of the 183 complaints, 66 were filed with Plaintiff's name spelled *Christian* Sanchez and 117 were filed with Plaintiff's name spelled *Cristian* Sanchez. All complaints were filed by Joseph Mizrahi, counsel for Plaintiff in this case. In all 183 lawsuits, Sanchez used nearly identical language and asserted nearly identical claims regardless of the defendant's identity, type of business, or the goods, services or information provided by its website.

As just one example, in *Sanchez v. USA Wine & Spirits, Inc.*, 21-CV-01797 (S.D.N.Y. March 2, 2021), Plaintiff's complaint is a near carbon copy of his Complaint in this case. For example, *every single word* of his First Cause of Action ADA (Violations of the ADA, 42 USC

3

§12181 et seq.) is identical in both complaints (except that Plaintiff describes Defendant Nutco, Inc. "as the site owner", which is false). Sec. Am. Complaint ¶55. Similarly, *every single word* of Plaintiff's Second Cause of Action (Violations of the NYCHRL) and Third Cause of Action (Declaratory Relief) is identical in both complaints. Moreover, other than removing references to the New York State statute he withdrew from his Second Amended Complaint, Plaintiff's prayer for relief is the same in both complaints.

Plaintiff similarly used identical pattern language in the Statement of Facts in both complaints. For example, Plaintiff's unsupported allegations about Defendant operating a website in New York State and identical to the conclusory allegations about USA Wine & Spirits. Sec. Am. Complaint ¶¶22-24. Plaintiff uses pattern language alleging "during Plaintiff's visits to the Website [between two dates], Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the facilities, goods and services of the Website." *Id.* ¶27.

And, even though he has added more alleged barriers to his Second Amended Complaint attempting to survive this motion to dismiss, these allegations are all cookie cutter, generalized descriptions of links not properly labeled and "site elements" that allegedly do not meet a non-existent or non-controlling standard. For example, in both complaints, Plaintiff makes the following identical allegation about his encounter with the company logos of each website:

> a.     The company logo acts as a link designed to take the user from wherever they may be within the Defendant's website to the homepage of that site. For this website, the link is not properly labeled and where the link ("logo") will operate properly (taking the user back to the home page), the missing label prevents the user (visually impaired) to interpret the logo/link and in the case of using a screen reader, the screen reader software cannot properly interpret the logo/link effectively hiding the purpose of that link from the user.

Exhibit 4, USA Wine & Spirits Complaint, ¶31(a); *see also* Sec. Am. Complaint ¶ 28(a). As discussed below, these facts about Plaintiff weigh heavily against his standing to bring this lawsuit.

### B.  Plaintiff's Allegations Regarding Defendant's Contacts With New York Are Unsupported and Plainly False.

Defendant does not conduct any online or other business in New York State. Defendant does not ship or deliver any products to New York State, and it does not have any distributor arrangements or capabilities in New York State. Defendant has no employees or company-owned locations outside of Detroit, Michigan, and has no current or ongoing wholesale distribution capabilities outside of the Midwest region. Defendant has no business operations or customer accounts in New York State, does not actively solicit business from customers located in New York State. Defendant's products are made-by-hand and of premium quality, requiring a premium price. Shipping, distribution, and delivery costs make distribution and delivery to wholesale customers in New York cost prohibitive. Davis Aff. at ¶5

Additionally, the Website has a store locator that visitors can use to find NUTCO's store customers (i.e. stores that carry Germack products). There are no stores in New York that carry Germack products, as can be confirmed by the store locator.[2] The store locator was recently updated in May 2021 and is an accurate representation of NUTCO's wholesale customer base. *Id*. ¶11.

### C.  The Website Is Fully Accessible To Blind and Visually-Impaired Users.

Plaintiff is seeking a permanent injunction under the ADA "to cause a change in Nutco's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers." (Sec. Am. Complaint at ¶¶6, 37). The basis

---

[2] The Court may consider the germack.com Website in deciding this motion, because Plaintiff's Complaint refers to the URL. *See Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) (stating that "the Court will consider the Defendant's website, as it was incorporated by reference in the Plaintiff's Complaint").

for his unsupported allegations about Defendant's entire corporate culture, policies and a Website it does not own or operate is a comparison of unspecified pages of the Website to standards *proposed* by W3C titled the Web Content Accessibility Guidelines version 2.1 ("WCAG 2.1"). *Id*. ¶20. Plaintiff alleges that "simple compliance" with WCAG 2.1 would remedy the alleged ADA violations, but fails to even specify what level of that *recommended* (not final) voluntary guideline he claims the Website must meet (A, AA, or AAA). *Id*. ¶34.

Plaintiff incorrectly alleges that Defendant is refusing to correct the alleged accessibility barriers. (See e.g. *Id*. at ¶25), as if the Plaintiff had actually requested that the barriers be removed, which he did not. (Germack Aff. at ¶13). Plaintiff asserts that the Defendant is "intentionally discriminating" throughout, while Nutco and the Website operators have never received a customer complaint that a user's screen-reader was not working. *Id*.

Nevertheless, the owner and operator of the Website, Germack Roasting Company, LLC, through the sworn affidavit of its managing member Frank Germack, can assure this Court that the Website is now and will remain accessible to blind and visually-impaired consumers. Germack Aff. at ¶18. Moreover, Germack confirms that the Website has no barriers of the type listed by Plaintiff in the Second Amended Complaint. *Id*. at ¶16. In fact, some of the barriers Plaintiff alleges he encountered on the Website are not even possible because they involve features that do not exist ("product reviews" alleged in ¶28(c) of Plaintiff's Sec. Am. Complaint are nowhere on the Website). Other allegedly encountered barriers could not have prevented Plaintiff, as he claims, from purchasing pistachio nuts or other snacks from the Website, because the so-called barriers are:

    (i)      optional/convenience only (Sec. Am. Complaint ¶¶28 (a), (b) and (d));

    (ii)     do not apply to a website customer (*Id*. ¶28(h); or

(iii)     cannot be accurate (*Id*. at ¶¶28(c), (i)) as prices and product descriptions are already

in a text format, and therefore require no "label" or conversion into text (e.g. should

be readable by any screen-reader). Additionally, graphics on any website in a pdf

format are not viewed solely with a screen-reader, but some other additional vision

aid like Adobe Reader (*Id*. at 28(h) - Plaintiff did not use the correct vision aid).

Germack Aff. at ¶14. Finally, future compliance with WCAG guidelines is ensured because the

Website and product lines were overhauled in 2020 and should not require any material redesign

for at least another 7 years (the typical lifespan of Germack Companies packaging). *Id*. at ¶16.

As recently as May 2021, the Website is accessible, operable, and independently usable for

blind and visually-impaired visitors, and complies with the optional WCAG 2.0 level A, and level

AA guidelines. Germack Aff. at ¶16. The Website is fully accessible to those using a screen-reader.

In this regard, an order can be placed, and page content, product listings content, shopping cart

and checkout operations content can be converted to text as required to use the Website with a

screen-reader. *Id*. Additionally, users are provided telephone and email ordering service and

customer service. *Id*.

Defendant's President and managing member of Germack Roasting Company, LLC, has

committed to complying with WCAG guidelines indefinitely to ensure accessibility, has adopted

internal policies to train employees on widely available accessibility tools and regularly monitor

accessibility using automated and manual accessibility checkers and aids, and has engaged external

website development professionals to provide regular (weekly) ongoing assurance that the

Website's content and functionality meet or exceed WCAG 2.0 AA minimum guidelines (or other

applicable guidelines that might be adopted by the federal government). *Id*.

### III.   PROCEDURAL POSTURE

Plaintiff commenced this suit by filing a summons and complaint with the United States District Court for the Southern District of New York on Defendant Germack Pistachio Company, a dissolved corporation. Plaintiff filed a First Amended Complaint to correct for that error by naming Defendant, Nutco, Inc., (d/b/a Germack Pistachio Company). Following Defendant's Motion to Dismiss filed on March 9, 2021, Plaintiff filed his Second Amended Complaint on April 22, 2021. Defendant now files its Motion to Dismiss Plaintiff's Second Amended Complaint with prejudice.

### IV.   LAW AND ARGUMENT

#### A.  Legal Standard Under Rule 12(b)(1).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should resolve the Rule 12(b)(1) challenge first. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). This is because a court lacks the judicial power to hear a party's claims when the party does not have standing. *Hillsdale Metro Assocs., LLC v. JPMorgan Chas Bank, Nat'l Ass'n*, 747 F.3d 44, 48 (2d Cir. 2014). "The task of the district court is to determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. Health Port Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits . . ." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

As the party invoking jurisdiction, the plaintiff bears the burden of establishing standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The plaintiff must "alleg[e] facts that

affirmatively and plausibly suggest" that he satisfies each requirement of standing. *Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted). Moreover, such facts must be pled with "sufficient specificity." *Feltzin v. Stone Equities, Inc.*, 2018 WL 1115135, at \*11 (E.D.N.Y. Feb. 8, 2018). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

### B.  Plaintiff has not alleged or suffered a concrete and particularized injury in fact.

To satisfy Article III standing requirements, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547. To establish injury in fact, the plaintiff must show that he suffered a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. Courts in the Second Circuit have interpreted the injury requirement as requiring plaintiffs to identify the specific barriers they encountered and how each barrier affected them. *See Stone Equities*, 2018 WL 1115135, at \*11; *Feltzin v. Triangle Props. #1 LLC*, No. 14-cv-5131, 2016 WL 11599264, at \*5 (E.D.N.Y. Dec. 15, 2016). For example, in *Feltzin v. Triangle Properties #1 LLC*, the plaintiff alleged that he was "unable to use the restrooms freely" because they lacked proper controls and wheelchair maneuvering space. *Id*. He also alleged that he encountered parking spaces that were not level, which "can cause Mr. Feltzin and those in wheelchairs to be tipped out of their chairs." *Id*. The plaintiff failed to allege any "additional information concerning either these alleged encounters or any resulting injuries" and failed to tether the alleged violations to any alleged injury. *Id*. Therefore, he lacked standing to sue under ADA Title III. The court found its conclusion "strengthened by an examination of the phrasing with which plaintiff introduces the list of alleged

violations, which reads as a recitation of the elements of an ADA claim that avoids alleging that plaintiff, himself, encountered and was injured by any violation." *Id.*

Likewise, the Second Amended Complaint in this case falls far short of satisfying the injury requirements of Title III and the ADA. Plaintiff fails to allege when he visited the Website and subsequently suffered the injuries alleged. Plaintiff alleges only that he visited the website an unspecified number of times, on unspecified dates between November 12, 2020 and April 22, 2021. Sec. Am. Complaint ¶ 27. These conclusory allegations "lack any specificity, and without more, preclude a reasonable inference that Plaintiff suffered injury under the ADA at any specifically identifiable time in the past." *Stone Equities*, 2018 WL 1115135, at *9.

As in *Triangle Properties*, Plaintiff's claim that he "'personally encountered' each of a long list of violations amounts to no more than a conclusory recitation of the legal elements of a direct injury under the ADA." *Triangle Properties*, 2016 WL 11599264, at *5; *see also Stone Equities*, 2018 WL 1115135, at *10 ("The Complaint's apparent purposeful attempt to circumvent any depiction of direct interaction by Plaintiff with the premises prevents Plaintiff from adequately alleging a concrete and particularized injury in fact under the ADA."). And Plaintiff makes no effort whatsoever to "tether his laundry list of alleged violations to any alleged injury," *Triangle Properties*, 2016 WL 11599264, at *6. In this regard, although Plaintiff in his latest pleading adds five more generic accessibility barriers he allegedly "encountered" "[w]hile attempting to navigate the Website" (Sec. Am. Complaint ¶ 28), he does not explain how these barriers interfered with his alleged goal of buying pistachio nuts using the Website. His conclusory assertions of "encountering barriers" are not plausibly tethered to any alleged injury.

Finally, the "barriers" he allegedly encountered are merely generic descriptions of a website that does not resemble the Website in this case. For example, the additional five barriers

Plaintiff identifies in his Second Amended Complaint complain of insufficiently "highlighted" promotions, lack of notification to the user that an item has been added to his or her "cart", and a wholesale catalog in PDF form that allegedly cannot be read by a screen reader. See Sec. Am. Complaint ¶ 28(e)-(i). Plaintiff does not allege how or when he actually encountered these "barriers", only that at some point in time between November 12, 2020 and April 22, 2021, they existed and pose a problem to visually-impaired users. *Id*. These few items added to the complaint do not cure the deficiencies that require dismissal. Adding *more* conclusory, generic allegations only makes the lack of a concrete and particularized injury more apparent. Plaintiff does not identify whether or how any of these accessibility barriers related to the pistachio nuts he claims he wanted but was unable to purchase. Plaintiff alleges he encountered multiple barriers for blind or visually-impaired people that denied him full enjoyment of the Website, but cannot explain how any of these barriers rendered him unable to purchase pistachio nuts. He states only that these barriers existed at some point in time and that when they are cured "he intends to return to the Website in order to purchase these nuts and other products." Sec. Am. Complaint ¶ 29. This form of generic, hypothetical pleading falls far short of satisfying the pleading requirements. *Harty v. Nyack Motor Hotel Inc*., No. 19-CV-1322 (KMK), 2020 WL 1140783, at *4 (S.D.N.Y. Mar. 9, 2020) (granting motion to dismiss where plaintiff identified certain obstacles to viewing a website but failed to explain "how they impeded his navigation of the Website, or what, if anything, he was able to observe when he did attempt to access the Website"). In fact, it is exactly the scattershot style of drive-by pleading one expects from a plaintiff who filed 183 nearly-identical lawsuits in one court in six months. Accordingly, Plaintiff still fails to adequately alleged a past injury that can support his standing to maintain this suit.

### C.  Plaintiff failed to establish a real and immediate threat of future injury.

Not only has Plaintiff failed to establish a concrete and particularized injury, he has also failed to establish a real and immediate threat of future injury. As discussed above, plaintiffs in ADA cases "must also prove that the identified injury in fact presents a 'real and immediate threat of future injury.'" *Bernstein*, 621 F. App'x at 57 (*quoting Shain*, 356 F.3d at 215–16).[3] Specifically, there must be a "plausible and definitive intent to return" to the property at issue. *Stone Equities*, LLC, 2018 WL 1115135, at *11. Intent to return is a "highly fact-sensitive inquiry." *Bernstein*, 621 F. App'x at 59 (*citing Kreisler*, 731 F.3d at 187–88; *Camarillo*, 518 F.3d at 158). The plaintiff must allege specific facts that "show a plausible intention or desire to return to the place but for the barriers to access." *Dominguez v. Banana Republic, LLC*, No. 1:19-CV-10171-GHW, 2020 WL 1950496, at *3 (S.D.N.Y. Apr. 23, 2020) (*quoting Small v. Gen. Nutrition Cos., Inc.*, 388 F. Supp. 2d 83, 86 (E.D.N.Y. 2005)). This Court determines plausibility using its "judicial experience and common sense." *Schwartz v. HSBC Bank USA, N.A.*, No. 14-CV-9525, 2017 WL 2634180, at *3 (S.D.N.Y. June 19, 2017) (plaintiff's "injury in fact must be plausible" to support standing). By this standard, Plaintiff's claims cannot survive judicial scrutiny.

A plaintiff's failure to plead any specific facts regarding past patronage, or an interest in patronage, weighs against any inference that he possesses any plausible intent to return to the property in question but for the alleged violations. *Stone Equities*, 2018 WL 1115135, at *11. Merely asserting an "[i]ntent to return to the place of injury 'some day,'" when alleged the barriers have been rectified, "is insufficient." *Small*, 388 F. Supp. 2d at 87 (*quoting Lujan*, 504 U.S. at

---

[3] Where a court finds that a plaintiff lacks standing to bring an ADA claim, it should decline to exercise supplemental jurisdiction over the related claims brought under state and local law. *See, e.g., Thorne v. Bos. Mkt. Corp.*, No. 19-CV-9932 (RA), 2020 WL 3504178, at *12 (S.D.N.Y. Jun. 29, 2020); *Sosa v. Zara USA, Inc.*, No. 19 CIV. 10958 (LGS), 2020 WL 3318210, at *3 (S.D.N.Y. Jun. 18, 2020); *Murphy v. Little Caesar Enters., Inc.*, No. 19 CIV. 10329 (LGS), 2020 WL 3318279, at *3 (S.D.N.Y. Jun. 18, 2020).

564). Plaintiffs who encountered accessibility barriers prior to filing their complaints "have standing to bring claims for injunctive relief if they show a plausible intention or desire to return to the place but for the barriers to access." *Disabled in Action of Metro, N.Y. v. Trump Int'l Hotel & Tower*, 2003 WL 1751785, at 7 (S.D.N.Y. Apr. 2, 2003); *see also Castillo v. John Gore Organization, Inc.*, 2019 WL 6033088, at *10 (E.D.N.Y. Nov. 14, 2019) (plaintiff's asserted *intent to return* to defendant's location after alleged violations are fixed is "not enough to raise a reasonable inference that she intended to visit the defendant's theater in the future").

Plaintiff failed to establish standing to bring an ADA claim because he does not offer sufficient "non-conclusory factual allegations" demonstrating a plausible intention to return to the Website. Plaintiff merely alleges that the Website's access barriers "now deter Plaintiff on a regular basis from accessing the Website" and that he "remains hopeful" that barriers are cured after which he intends to return to the Website. Sec. Am. Complaint ¶¶ 29-30. These allegations by a serial litigant about his general intent to return to the Website are the type that courts have repeatedly found insufficient. *See Stone Equities*, 2018 WL 1115135, at *2, 11 (no standing where plaintiff planned to return once barriers are corrected); *Dominguez v. Grand Lux Cafe LLC*, No. 19-CV-10345 (MKV), 2020 WL 3440788, at *3 (S.D.N.Y. June 22, 2020) (plaintiff "has failed to establish standing under the ADA because he does not offer any 'non-conclusory factual allegations' that demonstrate a plausible intention to return to a Grand Lux Café restaurant but for barriers to access."); *Hurley v. Tozzer, Ltd.*, No. 15 Civ. 2785, 2018 WL 1872194, at *6 (S.D.N.Y. Feb. 2, 2018) (no standing where plaintiff provided only "general and conclusory statements" regarding his intent to return).

Plaintiff does not plausibly allege facts to show he was actually denied goods or services because of his disability. At most, he claims the Website does not have all the specific assistive

aids he would prefer. He alleges he was highly interested in purchasing pistachio nuts on the Website and intends to do so when the alleged barriers are cured. Sec. Am. Complaint ¶29. Plaintiff, however, is not entitled to the auxiliary aid of his choice. *See West v. Five Guys Enters., LLC*, No. 15-cv- 02845 (JPO), 2016 WL 482981, at *1 (S.D.N.Y. Feb. 5, 2016) ("the ultimate decision as to what measures to take rests with the public accommodation …"); *see also* 28 C.F.R. Part 36, App. C, § 36.303(c) ("the Department believes that Congress did not intend under Title III to impose upon a public accommodation the requirement that it give primary consideration to the request of the individual with a disability."). Plaintiff insists in his Complaint that he will actually purchase pistachio nuts only after the Website complies with his particular choice of accessibility standards: the *recommended* WCAG 2.1 guidelines (without specifying level A, AA, or AAA).

Plaintiff's allegations lack "all the requisite specificity" necessary to establish an injury in fact. *Mendez v. Apple Inc*., No. 18 Civ. 7550, 2019 WL 2611168 at *2 (S.D.N.Y. Mar. 28, 2019). Such vague allegations are insufficient to establish a concrete and particularized injury for standing purposes. Because Plaintiff lacks standing to assert an ADA Title III claim, this complaint must be dismissed.

### D.  The Full Remediation of the Website Renders Plaintiff's Claims Moot.

Even though Plaintiff failed to identify particular deficiencies in the Website, Defendant's President has acted diligently and in good faith to ensure that the Website meets or exceeds WCAG 2.0 AA guidelines, thereby mooting this case. *See Diaz v. Kroger Co*., Case No. 18-CV-7953, 2019 WL 2357531 *5 (S.D.N.Y. June 4, 2019) (court dismissed as moot ADA Title III website case where Defendant removed alleged barriers, made website WCAG 2.0 compliant, and committed to monitoring technological developments in the future to ensure that visually-impaired

individuals have equal access to the Website); *Guglielmo v. Nebraska Furniture Mart, Inc*., Case No. 19-CV-11197, 2020 WL 7480619 *6 (S.D.N.Y. Dec. 18, 2020).

Article III, § 2 of the United States Constitution limits the jurisdiction of the federal courts to matters that present actual "cases and controversies," therefore, "an actual controversy must be extant at all stages of review." *Del-Orden v. Bonobos, Inc*., No. 17 Civ. 2744 (PAE) (SDNY Dec. 20, 2017), *quoting Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis*, 569 U.S., at 72. B. The voluntary cessation of wrongful behavior may render a case moot "if the defendant can demonstrate that (i) there is no reasonable expectation that the alleged violation will recur and (ii) interim relief events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York,* 594 F.3d 94, 110 *quoting Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996). To "maintain an ADA cause of action seeking injunctive relief to prevent future injury, a plaintiff must allege facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shaywitz v. Am. Bd. Of Psychology and Neurology*, 675 F. Supp. 2d 376, 382 (S.D.N.Y. 2009). The threat of future injury must be "real and immediate," as opposed to "merely conjectural or hypothetical." *Id*.

As set forth above, Defendant has provided detailed evidence that the Website was not inaccessible as Plaintiff alleges, that from the beginning of this lawsuit (which was filed without any pre-filing demand by Plaintiff) Defendant's President has engaged expert assistance to remediate any potential barriers present on the Website, has confirmed the entire Website is WCAG 2.0 AA compliant, and engaged website development professionals to provide weekly ongoing assurance that the entire Website will remain WCAG 2.0 AA compliant. Germack Aff. at

¶¶16, 18. Therefore, this Court lacks subject matter jurisdiction over the Defendant, because the Plaintiff's lawsuit has been mooted by these remediation efforts and Defendant has "demonstrated that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." *Diaz v. Kroger Co*., 2019 WL 2357531 at \*5 *quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 190 (2000).

### E.  Legal Standard Under Rule 12(b)(2).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 566 (2d Cir.1996). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) *quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). The plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 567 (2d Cir. 1996).

To determine whether the exercise of personal jurisdiction is proper, a court conducts a two-part inquiry: 1) a court looks at whether there is a basis for personal jurisdiction under the laws of the forum state; and 2) a court must examine whether the exercise of personal jurisdiction comports with due process. *Licci*, 732 F.3d at 168.

Plaintiff bears the burden of proving sufficient contacts with New York State. *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012). Courts may determine a motion to dismiss for lack of personal jurisdiction on the basis of affidavits alone. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A*., 722 F.3d 81, 84 (2d Cir. 2013) (citation omitted). In this case, after Plaintiff

16

filed his complaint and first amended his complaint, he learned that Defendant did not operate the Website and did not conduct any business or have any customer accounts in New York. Plaintiff refused, however, to correct his mistakes and merely plowed ahead making the same frivolous allegations against the wrong defendant.

Under New York's long-arm statute, a court may exercise personal jurisdiction over a non-domiciliary if (i) the non-domiciliary transacts business in New York State; and (ii) the claims against the non-domiciliary arise out of that business activity. *See Aquiline Capital Partners LLC*, 861 F. Supp. 2d at 386.

A defendant "transacts business" in New York for purposes of the long-arm statute when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law." *Family Internet, Inc. v. Cybernex, Inc*., No. 98 Civ. 0637(RWS), 1999 WL 796177, at 5 (S.D.N.Y. Oct. 6, 1999) (internal quotations omitted); *see also Best Van Lines*, 490 F.3d at 246.

Even if state law allows for the exercise of personal jurisdiction over a non-domiciliary, the court must also determine whether the exercise of jurisdiction under state law would satisfy federal due process requirements. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999); *Big Apple Pyrotechnics & Multimedia Inc*., 2007 WL 747807, at 2. "Due process requires that a non-resident defendant have 'certain minimum contacts [with the forum] ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marsalis v. Schachner*, No. 01 Civ. 10774(DC), 2002 WL 1268006, at 4 (S.D.N.Y. June 6, 2002) *quoting U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co*., 241 F.3d 145, 152 (2d Cir. 2001).

A non-domiciliary of the State of New York, with no physical locations in New York, but owning and operating a "highly interactive" website, has been considered by the Second Circuit to be conducting business in New York under the long-arm statute, but only with respect to the actual shipping activity into New York associated with the claim. *Chloe v. Queen Bee of Beverly Hills*, *LLC* 616 F.3d 158 (2d Cir. 2010) (finding personal jurisdiction over an out-of-state defendant with no physical locations in New York with respect to a highly interactive website and a website transaction involving counterfeit product sold online and shipped into New York). Queen Bee of Beverly Hills' website was highly interactive (i.e. evidence that Queen Bee purposely avails itself of the privilege of conducting activities in New York) because at least in part (and upon review of the website) it offers ongoing contractual customer accounts: (i) reoccurring auto-ship monthly subscriptions; and. (ii) wholesale drop-ship programs. Importantly, the court in *Chloe v. Queen Bee* disregarded shipping activity that was not related to the plaintiff's claim in its analysis. But for the shipping of counterfeit goods into New York, Queen Bee of Beverly Hills, an out-of-state-defendant with no physical locations in New York, would not have been found to be doing business in New York. (*Id*.) That Nutco's Website does not offer reoccurring sales contracts of any kind to anyone is a distinguishing factor. Further, the fact that Queen Bee of Beverly Hills was selling rare, luxury designer handbags, a category with logical appeal to New York City residents, (and not commodity grocery items like Nutco produces for the Website) is a distinguishing factor. Additionally, the fact that Nutco does not ship any goods into New York, and that the Website does not offer ongoing contractual arrangements like subscriptions or drop ship, and that the Website did not ship any goods into the State of New York relevant to Plaintiff's claim, are distinguishing factors. *Id*.

18

Plaintiff must "establish[] a reasonable probability that [the Website has] been "actually used [by the defendant] to effect commercial transactions with customers in New York." *See Alibaba Grp. Holding Ltd. v. Alibabacoin Found*., No. 18 Civ. 2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018). "[T]he existence of an interactive patently commercial website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." *Id*.

Website content that is informational in nature only is not sufficient to confer personal jurisdiction in New York. *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011). A website that contains an online shop is not doing business in New York State if the online shop cannot be used by New York residents. *Diaz v. Kroger Co*., 2019 WL 2357531 (no personal jurisdiction over grocer with no New York physical locations and a website that was accessible to New York residents; website's retail shop did not deliver into New York therefore was not available to New York customers).

**F.  This Court Does Not Have Personal Jurisdiction Over Defendant.**

Plaintiff has knowingly made bald and incorrect assertions that Nutco is doing business in New York absent any evidence or support, and therefore has not met its evidentiary burden. *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (finding the burden is on the plaintiff to provide evidence that the defendant is doing business in New York for personal jurisdiction purposes). Plaintiff allegations of personal jurisdiction rest entirely on the baseless claim that he was denied use and enjoyment of the "facilities, goods and services offered to the general public, on Defendant's Website in New York County." Sec. Am. Complaint ¶10. Defendant, however, is a Michigan corporation with no physical locations in New York, no customer accounts in New York, no sales to New York residents, no distribution capabilities in New York, no Website sales

19

to New York, and no Website shipments into New York. Plaintiff has not established that Defendant is doing business in New York under the state's long-arm statute. *See Diaz v. Kroger Co.*, 2019 WL 2357531 (non-domiciliary company with no physical locations in New York and a website with only informational content usable by New York residents does not conduct business in New York). The Website does not permit Nutco's customers to make purchases; *Defendant merely provides informational content* for a Website that is operated by another company and that is not rise to the level of conducting business. *Id*. The Website content, while accessible to New York residents, is not relevant to New York residents because Nutco customers cannot place orders on the Website, and Nutco has no customer accounts or distribution capabilities in New York.

Additionally, as a serial litigant filing nearly-identical pattern lawsuits, Plaintiff is not an actual or plausible customer now or into the future and is not making any claim (e.g. product liability claim) related to any item produced by Defendant or shipped by Germack Roasting Company into New York associated with the Website, or otherwise with respect to a business transaction with the Defendant. Simply, Defendant is not doing business in New York, Plaintiff's claims do not arise from the business activity of the Defendant in New York, and consequently, this court lacks personal jurisdiction over the Defendant under the New York long arm statute. To exercise personal jurisdiction over this Defendant, which has no substantial contacts with the State of New York would violate its due process rights. Accordingly, this court must dismiss this action under Fed. R. Civ. R. 12(b)(2) for lack of personal jurisdiction. *Diaz v. Kroger Co.*, 2019 WL 2357531.

### G.  Defendant Does Not Own or Operate The Website, Therefore Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted.

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint will not survive a motion to dismiss unless the plaintiff can assert a claim that is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "The court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 513 F. App'x 109, 111 (2d Cir. 2013). However, to survive dismissal, "a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Id. quoting Iqbal*, 556 U.S. at 678. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 *quoting Bell Atlantic v. Twombley*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). "To state a claim under Title III of the ADA, a plaintiff must allege (1) that he is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Andersen v. North Shore Long Island Jewish Healthcare System's Zucker Hillside Hosp*., No. 12-1049, 2013 WL 784391, at *6 (E.D.N.Y. Jan. 23, 2013) (emphasis added). In order to satisfy these requirements, Plaintiff asserts that he is disabled, that "the defendant" owns the Website, and that he was discriminated against

because the Website is not accessible to blind persons or visually-impaired people. Sec. Am.

Complaint ¶55.

Additionally, pursuant to the NYCHRL:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of ... disability ... directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof.

N.Y.C. Admin. Code § 8-107(4)(a). Similar to the ADA, the NYCHRL requires a defendant to be

an owner, lessee, proprietor, manager or superintendent, agent or employee of a place or provider

of a public accommodation. N.Y.C. Admin. Code § 8-107(4)(a). Plaintiff relies on the same

allegations as the ADA claim to satisfy the requirements to state a claim under New York City

law. See Am. Compl. ¶¶60.

However, Plaintiff cannot state a claim upon which relief can be granted pursuant to the

ADA or New York City law because the Defendant does not own, operate, or control the Website

where the alleged discrimination took place. See Germack Aff. ¶6. Because Defendant does not

own and operate the Website, the Complaint must be dismissed with prejudice for failure to state

a claim upon which relief can be granted. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963,

968 (9th Cir. 2006) ("There is nothing in these cases to support the proposition that a private entity

may be held liable under the ADA for discrimination that takes place on property it has not owned,

leased, or controlled); *Bebry v. ALJAC LLC*, 954 F. Supp.2d 173, 178 (E.D.N.Y. 2013) (dismissing

plaintiff's ADA and New York state law claim against one of the defendants because plaintiff

"failed to allege any facts in the complaint to allege that [defendant] was in a position of authority

or had power and discretion to perform potentially discriminatory acts"); *Cortez v. National*

*Basketball Ass'n.*, 960 F. Supp. 113, 115 (W.D. Tex. 1997) (dismissing ADA claim against the

NBA because it did not own or operate the venues where NBA games were played).

**V.      CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court, pursuant to Fed.

R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), dismiss this action, with prejudice.


Dated: May 24, 2021                          By: ___/s/ Elyse W. Germack_____
                                             Elyse W. Germack
                                             (MI Bar No. P71778 – *Pro Hac Vice*
                                             *Pending*)
                                             2140 Wilkins Street
                                             Detroit, MI 48207
                                             Cell: (248) 227-2810
                                             germack.elyse@gmail.com

                                             *Attorney for the Defendant*
                                             NUTCO, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on May 24, 2021, the foregoing was caused to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's CM/ECF system.

By: <u>  /s/ Elyse W. Germack                </u>
Elyse W. Germack
(MI Bar No. P71778, *PHV Pending*)