**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CHRISTIAN SANCHEZ, on behalf of<br>himself and all others similarly situated, | : Civil Case No.: 1:20-cv-10107-JPO |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : ORAL ARGUMENT REQUESTED |
| | : |
| NUTCO, INC., | : |
| | : |
| Defendant, | : |
| | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
<u>**MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

**Pages**

I.    INTRODUCTION………………..……………………………………………..1

II.   PROCEDURAL HISTORY………………………………………...……….4

III.  STATEMENT OF FACTS……………………………………………………6

IV.   LEGAL STANDARDS……………………………………………………..8

    A.  Standards When Evaluating a Fed R. Civ. P.
      12(b)(1) Challenge …………………………..……………......8

    B.  Article III Standing ………………………..…………......9

    C.  Mootness………………………………………………….9

    D.  Standards When Evaluating a Fed. R. Civ.
      P. 12(B)(2) Challenge . …………………………………...10

    E.  Standards When Evaluating a Fed. R. Civ.
      P. 12(B)(6) Challenge . …………………………………...11

V.    ARGUMENT…………………………………………………...12

    A.    The This Court Has Subject Matter Jurisdiction In This
        Case……………………………………………………..12

    i.   Due Extrinsic Evidence in a Rule 12(b)(1) Motion to
       Dismiss …………………………………………………12

    ii.  Plaintiff Has Established a Present Injury…..……………………15

    iii. Plaintiff Properly Pleads a Threat of Future Injury………………….13

    iv.  Plaintiff's Claims Are Not Moot…..…………………………..….16

B.    The Court Has Personal Jurisdiction Under 12(B)(2)……...………….19

C.    The Complaint Properly Pleads Defendant's Violations
      of the ADA and NYCHRL…….….....…………………….….....……...22

VI.   CONCLUSION…………………………………....…….....………………….25

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

**Cases**

*A.I. Trade Fin., Inc., v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)...................................... 11

*Access Now, Inc. v. Sportswear, Inc.*, 298 F. Supp. 3d 296 (D. Mass. 2018)................... 22

*Already, LLC v. Nike, Inc*., 568 U.S. 85, 133 S. Ct. 721,
184 L. Ed. 2d 553 (2013) .................................................................................... 17

*Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF),
2020 U.S. Dist. LEXIS 157800 (S.D.N.Y. Aug. 31, 2020) ........................................ 9, 10

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ................................... 20, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 12

*Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER),
2019 U.S. Dist. LEXIS 178306  (S.D.N.Y. Oct. 15, 2019)............................................. 20

*Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF),
2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ......................... 1, 11, 15, 16, 17

*Campbell v. Greisberger*, 80 F.3d 703 (2d Cir. 1996)................................................ …..10

*Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94 (2d Cir. 2010)...... …..   10

*Clemmons v. Hodes*, 15 Civ. 8975 (KPF),
2017 U.S. Dist. LEXIS 158550 (S.D.N.Y. Sept. 26, 2017)............................................ 11

*Cortec Industries, Inc., v. Sum Holding L.P.*, 949 F.3d 42 (2d Cir. 1991) ....................... 5

*De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191 (S.D.N.Y. 2016)…...10

*De La Rosa v. Lewis Foods of 42nd St. LLC*, 124 F. Supp.3d 290 (S.D.N.Y. 2015)..…...23, 24

*Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE),
2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) ............................................ 18

*Elsevier, Inc., v. Grossman*, 77 F.Supp.3d 331 (S.D.N.Y. 2015) .................................... 11

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Yian Chen,* 12 Civ. 6390 (JPO),
2013 U.S. Dist. LEXIS 59538 (S.D.N.Y. Apr. 25, 2013)............................................... 21

*Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y. 2017) ................... 15

*Feltzin v. Triangle Props. #1, LLC*, 14-cv-5131 (JMA) (ARL),
2016 U.S. Dist. LEXIS 192861 (E.D.N.Y. Dec. 15, 2016) ............................. 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167,
120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) .......................................... 17

*Gregory v. Daly,* 243 F.3d 687 (2d Cir. 2001) ................................................. 9

*Harty v. W. Point Realty, Inc.,* 47 F.Supp 3d 163 (S.D.N.Y. 2020) .................................. 16

*Hotel Emples. & Rest Emples. Union, Local 100 v. City N.Y. Dep't of Parks and Rec.*,
311 F.3d 534 (2d Cir. 2002) ........................................................... 6, 20

*Ikeda v. J. Sisters 57, Inc.*, 14-cv-3570 (ER),
2015 U.S. Dist. LEXIS 87783 (S.D.N.Y., July 6, 2015) .................................. 22

*Jaquez v. Dermpoint*, 20-CV-7589 (JPO),
2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021)............................. 1,2,9,12,14, 23

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD)
(BCM), 2017 U.S. Dist. LEXIS 29806  (S.D.N.Y. Mar. 2, 2017)............................. 11, 21

*Juscinska v. Paper Factory Hotel, LLC*, 18-cv-8201 (ALC),
2019 U.S. Dist. LEXIS 92550 (S.D.N.Y., Jun. 3, 2019) ............................................. 14, 15

*Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298 (2012)............................. 10, 17

*Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260 (9th Cir. 2015)................... 24

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d. Cir. 2013)........................ 10, 16

*Lanier v. Bats Exch., Inc.*, 838 F.3d 139 (2d Cir. 2016).................................... 12

*Lan Lan Wang v. Pataki*, 396 F. Supp 2d 446 (S.D.N.Y. 2005)......................................... 6

*Lee v. Sutton Garage, LLC*, 15-cv-5460 (KBF),
2017 U.S. Dist. LEXIS 174358 (S.D.N.Y Oct. 19, 2017) ................................ 23

*Metro. Life Ins. Co., v. Robertson-Ceco Corp.,* 84 F.3d 560 (2d Cir. 1996) ................... 11

*Monge v. 405 Hotel Llc*, No. 19-CV-0451 (SJF) (ARL),
2021 U.S. Dist. LEXIS 36039 (E.D.N.Y. Feb. 24, 2021)................................ 16

*Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012) ........... 9

*Novelaire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472 (CM),
2013 U.S. Dist. LEXIS 168192 (S.D.N.Y. Nov. 21, 2013) ............................................... 21

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
05 Civ. 9016 (SAS), 2006 U.S. Dist. LEXIS 11617 (S.D.N.Y., Mar. 20, 2006) ............. 22

*Ramirez v. Support Buddy Inc.*, 17 CV 5781 (VB),
2018 U.S. Dist. LEXIS 76257 (S.D.N.Y. May 4, 2018).................................................... 24

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ................................... 9

*Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO),
2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019) ......................................... 10, 18

*Takeda Chem. Indus. v. Watson Pharm., Inc.,* 329 F. Supp. 2d 394 (S.D.N.Y. 2004)..... 12

*Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438 (S.D.N.Y. 2018) ...................................... 17

**Statutes**

42 U.S.C. § 12181 *et seq.* ................................................................................. *passim*

N.Y.C. Admin. Code § 8-101 *et seq.*, ...................................................................... 8

**Rules**

Fed. R. Civ. P.  12(b)(1), 12(b)(2), 12(b)(6), 56 .............................................. *passim*

N.Y. CLS C.P.L.R. § 302. .............................................................................. *passim*

**Legislative Materials**

Hamilton Fish IV (R. NY) "Americans with Disabilities Act" Congressional Record,
136:8, May 22, 1990, H11452........................................................................... 25

Plaintiff Christian Sanchez ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Nutco, Inc. d/b/a Germack Pistachio Company's ("Defendant") motion to dismiss ("Motion to Dismiss").

## I.      <u>INTRODUCTION</u>

The Second Amended Complaint ("SAC")[1] properly pleads violations of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL"). Defendant's Motion to Dismiss does not set forth appropriate grounds for dismissal.[2]

This Motion to Dismiss should be denied as it argues propositions that were very recently decided by this Court (in May 2021) in an ADA website accessibility case where a similar motion was denied in its entirety. *See Jaquez v. Dermpoint*, 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021). This Court's *Jaquez* decision was issued four days prior to Defendant's filing of this Motion to Dismiss and is not addressed at all in Defendant's moving papers.   At a minimum, Defendant was unaware of the decision at the time of the filing of its Motion to Dismiss, and had it been aware it would probably not have expended resources to file the motion.

This Court held in *Jaquez* that an ADA website-accessibility complaint need not "contain detailed factual allegations" to survive a motion to dismiss. *Id.* at *4. Indeed, this Court specifically

---

[1]      "¶__" means a citation to paragraph numbers in the Second Amended Complaint. "Def. Mem." refers to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 28). "Def. Ex. 1" refers to the Declaration of Lori Davis submitted in support of Defendant's Motion to Dismiss, dated May 21, 2021 (ECF No. 28-1). "Def Ex. 2" refers to the Declaration of Frank A. Germack III submitted in support of Defendant's Motion to Dismiss, dated May 24, 2021 (ECF No. 28-2).

[2]      Defendant repeatedly attempts to malign Plaintiff by casting a dark eye on the number of ADA cases filed by Plaintiff. *See, e.g.*, Def. Mem. at **3-5. Courts have routinely found nothing wrong with the filing of numerous lawsuits against defendants so long as the harms to be remedied actually exist. *See, e.g.*, *Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202 at *29 (S.D.N.Y. Dec. 4, 2019).   Contrary to Defendant's apparent intent, these ad hominem attacks do not damage the integrity of this action.   In *Jaquez v. Dermpoint*, defendant also alluded in its motion to dismiss that plaintiff "filed numerous nearly identical lawsuits against other businesses." *Jaquez v. Dermpoint*, No. 1:20cv7589 (S.D.N.Y. Jan. 19, 2021), ECF. No. 14.). This Court did not see this as a proper basis for dismissal and denied the motion to dismiss in its entirety.

noted that deficient website features form a pleading sufficient to properly state an injury. The features specifically noted by the court in *Jaquez* included: (i) failure to describe the contents of graphical images; (ii) failure to properly label titles; (iii) failure distinguish one page from another; (iv) pages containing multiple broken links and inaccurate headings; (v) inability to add items to the online shopping cart; and (vi) the website accessibility icon was too hard to find. *See Id*. at \*4-\*5.

The SAC specifically includes many of the same problems this Court has found sufficient in *Jaquez* to plead an injury under the ADA. Specifically, the SAC pleads that the Website contained mislabeled or unlabeled links, links that lacked a proper description, site elements, such as product descriptions, product reviews, prices, and the continue shopping button, that were not labeled to integrate with the screen reader, and that the Website does not indicate that an item was added to a user's cart, inhibiting visually impaired users from determining what they are purchasing. ¶28. Given the similarity of these barriers pled in the SAC to those this Court held to adequately pled injury in *Jaquez*, Defendant's motion should not stand.

Similarly, as this Court already stated in the same ruling, it is inappropriate under Rule 12(b)(6) to consider extrinsic evidence in a motion to dismiss, such as the affidavits Defendant has submitted here. *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at \*6. As such, these documents should be given no weight by the Court.

As in *Jaquez*, Defendant's Website is discriminatory against the visually impaired. Defendant, using improperly submitted affidavits, attempts to divert from its (pretty clear) liability by stressing a distinction between Defendant's corporate entity and its affiliate company, Germack Roasting Company, LLC, and thereby claiming that: (i) Defendant does not own or operate the Website, and (ii) Defendant does not do business in New York by way of the Website. Defendant

does not deny, however, that while the general public can indeed order products on the website for shipping to New York, blind people are not afforded that same accommodation.

Further, Defendant explicitly concedes that Germack Roasting Company, LLC was created to run all Germack branded retail operations.  Further, Defendant's affidavit evidence explicitly demonstrates that Defendant owned the domain registration for the Website at the time of the filing of the Complaint, and that Defendant inures monetary benefits from the offering and sale of products on the Website. Therefore liability attaches.

Notwithstanding Defendant's protestations, the Court does indeed have subject matter jurisdiction over this case. The Complaint pleads with particularity the functions of the Website that Plaintiff was unable to access and how that impeded and injured him by denying equal treatment to that of a sighted consumer. Plaintiff has properly pled that these issues are ongoing, and has demonstrated the same by way of expert affidavit evidence.

Similarly, Defendant's unsupported assertions concerning alleged remedial measures do not moot the case. By contrast, Plaintiff has satisfied the threshold for standing – the SAC clearly alleges that: (i) Plaintiff suffered an injury when he was unable to transact business on the Defendant's Website; and ii) Plaintiff intends on returning to Defendant's website to attempt to conduct a transaction once the access barriers have been cured.

Furthermore, Defendant's arguments in support of mootness rely on declaratory evidence extrinsic to the SAC. The Court should not give this evidence any weight, as: (i) discovery has not yet commenced in this matter; (ii) Plaintiff's pleadings directly contradict Defendant's extrinsic evidence; and (iii) Plaintiff's competing expert declaration demonstrates the ongoing existence of access barriers on Defendant's website.

This Court also has personal jurisdiction over this case pursuant to New York's Long Arm Statute. This is established by the fact that Defendant admits that the Website sells products to New York originating from Defendant. Moreover, the overall interactivity of Defendant's Website – which allows for the ordering and delivery of products directly to consumers in New York State – supports personal jurisdiction over Defendant in New York. Even if done at the behest of a formally separate entity, Defendant's use of a corporate agent to conduct business with individuals in New York constitutes a sufficient contact with New York to establish personal jurisdiction.

Finally, the SAC properly pleads a cause of action under the ADA and NYCHRL. As this Court already stated, it is inappropriate under Rule 12(b)(6) to consider extrinsic evidence. Nevertheless, Plaintiff's allegations are supported by Defendant's tacit admissions within these affidavits. Defendant owns the website at issue. Def. Ex. 2 at ¶6. Defendant concedes that its corporate affiliate: (i) was created for the sole purpose of selling Defendant's products; and (ii) controls the operation of the website. Def. Ex. 1 at ¶6. Accordingly, notwithstanding its attempts at obfuscation, Defendant is clearly obligated under the ADA to ensure accessibility on the Website it owns. It is therefore liable for failing to remedy the discriminatory access barriers contained therein.

Accordingly, Defendant's Motion to Dismiss should respectfully be denied in its entirety.

## II.    **PROCEDURAL HISTORY**

The history of this action demonstrates Defendant's almost routine procedural error. On December 2, 2020, Plaintiff filed the initial complaint in this action. ECF No. 1.  After being informed by Defendant that he identified the wrong corporate entity in the initial complaint, Plaintiff then filed the First Amended Complaint on February 9, 2021.[3] ECF No. 5.

---

[3] Plaintiff first amended the initial complaint on the basis of representations made by Defendant's counsel indicating that Defendant "may be the intended defendant" in the action.  Especially since Defendant now claims that it is not

Despite not being a member of the S.D.N.Y. bar, defense counsel (in error) entered a notice of appearance and not a *pro hac vice* motion. ECF. No. 8. On February 17, 2021, Defendant sent a letter to the Court requesting leave to make a motion to dismiss, which the Court initially granted, setting the deadline for the initial motion on March 10, 2021. ECF Nos. 10, 11. On March 9, 2021, Defendant filed a motion to dismiss. ECF No. 12. On March 18, 2021, the clerk of court found this to be a deficient docket entry based on Defendant's failure to file affidavits and the memorandum of law as separate documents. Defendant also filed a deficient motion to appear *pro hac vice* on March 18, 2021. ECF No. 13. Defendant then resubmitted the first Motion to Dismiss and Memorandum of Law on that same day. ECF Nos. 14, 15. Defendant then filed two additional deficient *pro hac vice* motions, both on March 19, 2021. ECF Nos. 18, 20.

Plaintiff then moved to request an extension of time to file a Second Amended Complaint on March 19, 2021, noting that Defendant's initial motion to dismiss had failed to comply with the Court's local rules as it exceeded the page limitations on motions, had failed to file the notice of motion separately from the memorandum of law, and had been filed without defense counsel's signature block. ECF No. 21. Plaintiff also requested additional time to amend the complaint and rectify the confused docket. *Id*. Defendant opposed this letter on March 20, 2021 and asserted that Plaintiff was pursuing the action in bad faith, further amendment of the Complaint was futile, and that the Court both lacked personal jurisdiction over Defendant and that the case was moot. ECF No. 22. On March 24, 2021, the Court issued a Text Order granting Plaintiff's request. ECF No. 24.

On April 22, 2021, Plaintiff filed the SAC. ECF No. 25. On May 24, 2021, Defense counsel filed another *pro hac vice* motion. ECF No. 26. This too was rejected as deficient by the Court on

---

the correct entity to be sued, discovery would need to be taken.  Should additional amendment be necessary, Plaintiff hereby seeks leave to amend. *See Cortec Industries, Inc., v. Sum Holding L.P.*, 949 F3d. 42 (2d Cir. 1991).

May 25, 2021. Defendant filed the instant Motion to Dismiss on May 24, 2021. ECF No. 27. Defense counsel thereafter filed a sixth motion to appear *pro hac vice*, which was granted by the Court on June 2, 2021. ECF No. 30.

## III.   <u>STATEMENT OF FACTS</u>

Defendant is a snack food distributing company that owns, operates, and actively contributes to the content and features on its website, www.germack.com (its "Website"), where goods are offered for sale to consumers. ¶22. Defendant concedes that it owned the domain registration for the Website at the time the Complaint was filed. Def. Ex. 2 at ¶6. Defendant further concedes that it operated the Website until it created Germack Roasting Company, LLC in order to run its retail operations, which includes the operation of the Website.  *Id.* Both Defendant and Germack Roasting Company, LLC share the same corporate executives, including Frank A. Germack, III, who serves as Defendant's president and managing member of Germack Roasting Company, LLC.  Def. Ex. 2 at ¶¶1-2. The Website sells Germack branded products that originate from Defendant. Def. Ex. 2 at ¶2(b). The Website offers the delivery of such goods throughout the United States, including New York State. ¶¶22-24.[4]

Plaintiff is a visually impaired and legally blind person who requires the use of screen-reading software in order to read website content using his personal computer. ¶¶1, 12. Plaintiff made several visits to the Website (the first of which occurring on November 12, 2020 and the second of which occurring on April 22, 2021). ¶27. Plaintiff browsed and attempted to transact business on Defendant's Website by way of, *inter alia*: (i) purchasing pistachio nuts and other

---

[4] The Website offers shipment as far as Alaska, Hawaii, Puerto Rico, a fact that is demonstrated by the Website's shipping policy, which can be accessed by adding a product to the "cart." *See*  https://www.germack.com/shop,cart (last visited June 22, 2021). As a public document, it is appropriate to take notice of content on a website on a motion to dismiss where the authenticity of a website has not been questioned. *See Hotel Emples. & Rest Emples. Union, Local 100 v. City N.Y. Dep't of Parks and Rec.*, 311 F.3d 534, 549 (2d Cir. 2002); *Lan Lan Wang v. Pataki*, 396 F. Supp 2d 446, 456 (S.D.N.Y. 2005).

snack foods; (ii) taking advantage of discounts and promotions offered by the Website; and (iii) understanding the different product details for the products offered on the Website in order to complete a purchase by, for instance, listening to audio descriptions of the images on the Website. ¶4. Plaintiff was unable to successfully do the following things because the Website was not compliant with the current ADA accessibility standards and contained/contains specific issues both at the time Plaintiff browsed the Website and as of the date of the filing of the Second Amended Class Action Complaint. ¶¶4, 27. Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the services offered to the general public on the Website. ¶27. These barriers include, without limitation (collectively, the "Access Barriers"):

- Mislabeled or unlabeled links, such as the company logo on the homepage of the Website, that lead the screen reader to misinterpret the link, effectively hiding the purpose of the link from Plaintiff.

- Various links lacking a proper description, which result in screen readers just reading the word "link" with no further description, thus barring the user from any understanding as to what to do with the "link."

- Site elements, such as product descriptions, product reviews, prices, and the continue shopping button, that are not labeled to integrate with the screen reader. The information is not accessible when using the keyboard for navigation, significantly hindering the visually impaired from being able to browse the Website.

- Promotions on the Website are not highlighted in a way that makes them accessible. For example, the principal banner on the homepage of the Website does not describe promotions for Defendant's products, such as a deal for 10% off online orders under

the "Snack with Us" campaign. Consequentially, Plaintiff and other visually impaired users would be effectively denied savings available to sighted users.

- The Website does not indicate that an item was added to a user's cart, inhibiting visually impaired users from determining what they are purchasing.

- The banner at the bottom of the Website's homepage is rendered in such a way that screen readers cannot interpret the Website's "best seller" items. ¶28.

Additionally, Plaintiff's expert, Robert Moody, has confirmed that the Website still suffered from significant access barriers as of June 9, 2021, several weeks after the instant motion to dismiss was filed. *See* Declaration of Robert D. Moody ("Moody Decl.") at ¶¶7-8, a true and correct copy of which is annexed hereto as <u>Exhibit A</u>.

While Plaintiff was denied equal access to the Website, Plaintiff remains hopeful that the Access Barriers will be cured, as he intends to return to the Website in order to purchase pistachios and other products from Defendant as soon as the Accessibility Barriers are cured. ¶29. Based on these allegations, the SAC adequately alleges: (i) Defendant's violations of 42 U.S.C. § 12181 *et seq.* – Title III of the ADA; and (ii) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (the "NYCHRL").

## IV.   <u>LEGAL STANDARDS</u>

The Second Circuit cautions courts from prematurely dismissing complaints of civil rights violations. *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012).

### A.  STANDARDS WHEN EVALUATING A FED. R. CIV. P. 12(B)(1) CHALLENGE

When examining a Fed. R. Civ. P. 12(b)(1) motion, a court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively." *Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800, at *4 (S.D.N.Y. Aug. 31, 2020) (internal citations omitted). The burden of providing subject matter jurisdiction by a preponderance of the evidence is borne by the Plaintiff. *Id.* This Court recently held in an ADA website accessibility case that a complaint need not contain detailed factual allegations to survive a motion to dismiss. *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *4.

**B.  ARTICLE III STANDING**

An injury sufficient to support Article III standing is established when "a plaintiff [] show[s] that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016). "An injury is particularized when it affect[s] the plaintiff in a personal and individual way. . . [a]n injury is concrete when it actually exists or, put another way, when it is real rather than abstract. Notably, this is a low threshold, and the plaintiff need not be capable of sustaining a valid cause of action." *Bassaw*, 2020 U.S. Dist. LEXIS 157800, at *6.

Notably, the Second Circuit held that "a plaintiff has standing in an ADA suit seeking injunctive relief where 1) the plaintiff alleged past injury under the ADA; 2) it was reasonable to infer that the discriminatory treatment would continue; and 3) it was reasonable to infer. . . that [the] plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp*., 731 F.3d 184, 187-88 (2d. Cir. 2013).

**C.  MOOTNESS**

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). The Second Circuit utilizes a two-part test in determining whether a defendant's conduct has rendered a case moot. The defendant must demonstrate that: "(1) there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 U.S. Dist. LEXIS 47073 at *17 (S.D.N.Y. Mar. 21, 2019); *see also Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (*quoting Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).   Specifically, where noncompliance can result from an easily changeable policy, a court cannot simply say that a defendant has made an affirmative showing that the continuation of their alleged ADA violations is nearly impossible. *De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (internal citations omitted).

## D.  STANDARDS WHEN EVALUATING A FED. R. CIV. P. 12(B)(2) CHALLENGE

"To survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff has the burden of establishing that the court has jurisdiction over the defendant." *Clemmons v. Hodes*, 15 Civ. 8975 (KPF), 2017 U.S. Dist. LEXIS 158550, at *18-*19 (S.D.N.Y. Sept. 26, 2017) (*citing Metro. Life Ins. Co., v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). When considering a Rule 12(b)(2) motion to dismiss, a court must construe all of the plaintiff's allegations as true. *See Elsevier, Inc., v. Grossman*, 77 F.Supp.3d 331, 341 (S.D.N.Y. 2015) (*citing A.I. Trade Fin., Inc., v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)).

Under New York C.P.L.R. §302(a)(1), a court determines whether it has personal jurisdiction by examining: (1) whether the defendant transacts any business in New York; and (2)

whether the cause of action arises from such a business transaction. *See Camacho v. Vanderbilt Univ.,* 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202 at *7 (S.D.N.Y. Dec. 4, 2019) (*quoting* N.Y. C.P.L.R. § 302(a)(1)). To determine whether the operation of a website amounts to the transaction of business in New York, courts typically look at the degree of interactivity offered by the website. *Id*. at *12.  If the website falls on the far end of the spectrum by directly allowing the purchase of goods or services, then the website is "fully interactive" and can be a basis for personal jurisdiction.  *Id*. at *13. Similarly, New York's long-arm statute provides for specific jurisdiction over a non-domiciliary that, "in person or through an agent" transacts any business within the state or contracts anywhere to supply goods or services in the state." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 29806, at *21 (S.D.N.Y. Mar. 2, 2017).

### E.  STANDARDS WHEN EVALUATING A FED. R. CIV. P. 12(B)(6) CHALLENGE

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Jaquez*, 20-CV-7589 (JPO), at *4 (S.D.N.Y. May 2020) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such facial plausibility is properly presented when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556).  All reasonable inferences are drawn in the plaintiff's favor. *Id*. The court's review is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference." *Id*. at *6. In order to survive dismissal, "the plaintiff must provide the grounds upon which his claims rest through factual allegations sufficient to raise a right to relief above the speculative level." *Lanier v. Bats Exch., Inc*., 838 F.3d 139, 150 (2d Cir. 2016) (internal citations

omitted).

V.    **ARGUMENT**

    A.  **THIS COURT HAS SUBJECT MATTER JURISDICTION IN THIS CASE**

       i.    <u>Extrinsic Evidence in a Rule 12(b)(1) Motion to Dismiss</u>

Examining extrinsic evidence is limited under Rule 12(b)(1) where a challenge to jurisdiction "is so intertwined with the merits that its resolution depends on the resolution of the merits." *Takeda Chem. Indus. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394, 402 (S.D.N.Y. 2004) (citation omitted). Under those circumstances the court treats the motion as one for summary judgment and dismisses only where no triable issues of fact exist. *Id*. The merits of this case rest on whether Access Barriers existed when Plaintiff used the Website. Defendant's evidence thus sounds in Rule 12(b)(6), rather than 12(b)(1).[5] Defendant has interwoven its jurisdictional challenge with the case's merits to plead untested counter-allegations. Below are illustrative examples:

| **Assertions of Def. Mem. based on extrinsic evidence** | **Allegations in the Amended Complaint** |
|---|---|
| "As recently as May 2021, the Website is accessible, operable and independently usable for blind and visually-impaired visitor... Germack Aff. At ¶16." Def. Mem. at *7. | "Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the facilities, goods and services offered to the public." ¶27. |
| "[Defendant] has committed to complying with WCAG guidelines indefinitely to ensure accessibility, had adopted internal policies to train employees on widely available accessibility tools and regularly monitor accessibility." Def. Mem. at *7 (citing Def. Ex. 2 at ¶16). | "Although Defendant may currently have centralized policies regarding maintaining and operating the Website . . . Defendant lacks a plan and policy reasonably calculated to make these functions fully and equally accessible to and independently usable by, blind and other visually-impaired consumers." ¶39. |

---

[5] In *Jaquez*, this Court refused to consider matters outside of the pleadings or directly convert that matter into a motion for summary judgement, inviting the party to file a separate motion at a later juncture. *Jaquez*, 20-CV-7589 (JPO) at *6, fn.1 (S.D.N.Y. May 2020).

Since discovery has not been conducted, the use of extrinsic evidence should be limited or judged under the standards of Rule 56. Defendant should be able to present this evidence for evaluation only after Plaintiff has had the opportunity to scrutinize it. At this stage, Defendant's extrinsic evidence is a set of conclusory counter allegations that do not eliminate the material issues of this case. Under either framework, this extrinsic evidence should be disregarded by the Court.

ii.    Plaintiff Has Established a Present Injury

Plaintiff has pleaded that he encountered Access Barriers that prevented him from transacting business on the Website. ¶¶27-28. Encountering such barriers effectively denied Plaintiff the ability to enjoy the privileges of Defendant's public accommodation. ¶27. While Defendant claims that "Plaintiff fails to allege when he visited the Website" and "Plaintiff alleges only that he visited the website an unspecified number of times, on unspecified dates between November 12, 2020 and April 22, 2021" (Def. Mem. at *10), this is a patent misrepresentation of the allegations alleged in the SAC.  The SAC explicitly alleges that November 12, 2020 and April 22, 2021 *were the two specific dates when Plaintiff visited the Website*. ¶27. Further, contrary to Defendant's assertions that the SAC fails to "[e]xplain how [the Access Barriers] interfered with [Plaintiff's] alleged goal of buying pistachio nuts using the Website" (Def. Mem. at *10), the SAC's allegations detail, among other things, that Plaintiff was unable to make a purchase because elements such as product descriptions and prices were not compatible with his screen reader, and that he was also unable to determine whether items were added to the cart function. ¶¶4, 28. These specific functions directly prevented Plaintiff from completing a purchase in a manner which would otherwise be available to sighted individuals. ¶¶4, 31.

These barriers are exactly the type that already been held to sufficiently plead a present injury under the ADA by this very Court. This Court has previously held that deficiencies on a

13

website, such as a failure to "describe the contents of graphical images, properly label title[s]…

distinguish one page from another and that it contains multiple broken links and inaccurate

headings" is sufficient to plead a via ADA claim of discrimination for denial of full and equal

treatment. *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *4-*5.

Similarly, in *Juscinska v. Paper Factory Hotel, LLC*, the court there rejected a motion to

dismiss where:

> [A]s alleged in the Complaint, Plaintiff was not able to browse Defendant's website
> and make a reservation with the same efficiency, immediacy, and convenience as
> those who do not need accessible guest rooms. Plaintiff was unable to discern the
> accessible features of rooms that would meet her needs. Defendant's website did
> not provide Plaintiff with the opportunity to evaluate the suitability of common
> areas and the amenities Defendant provides to its guests. Taking the facts in the
> Complaint as true, it is plausible that, at the time Plaintiff visited Defendant's
> website, it was not compliant with the ADA as interpreted by the DOJ.

*Juscinska v. Paper Factory Hotel, LLC*, 18-cv-8201 (ALC), 2019 U.S. Dist. LEXIS 92550,

at *8-*9 (S.D.N.Y., Jun. 3, 2019).

Likewise, in *Camacho v. Vanderbilt*, the plaintiff had an injury plead a concrete injury

where:

> Plaintiff claims that he suffered an injury under the ADA when he was unable to
> access certain portions of the Website's publicly available content because of his
> disability. Specifically, Plaintiff states that he was unable to navigate the Website
> because its navigation tabs were incompatible with his screen-reading software, and
> unable to utilize the Website's net price calculator because that page was also
> incompatible with his screen-reading software. Plaintiff has also alleged that the
> Website's access barriers regularly deter him from accessing the website. The
> Second Circuit has made clear that "deterrence constitutes an injury under the
> ADA."

*Camacho*, 2019 U.S. Dist. LEXIS 209202 at *26.

Plaintiffs are also held to suffer the injury of unequal treatment under the ADA when

barriers render their use of a public accommodation more difficult or burdensome than for non-

disabled individuals. *See, e.g.*, *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017).

Here, Plaintiff specifically identified how he attempted to browse Defendant's Website and complete a transaction, but was unable to because of specific website functions that were incompatible with his screen-reading software. ¶28. Plaintiff also pleaded that the Access Barriers continuously deter Plaintiff from visiting the Website, presently and in the future. ¶30. This is in direct contrast to the authority cited by Defendant, where the plaintiff did not even detail which business he had patronized. *Cf. Feltzin v. Triangle Props. #1, LLC*, 14-cv-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861, at *15 (E.D.N.Y., Dec. 15, 2016); Def. Mem. at *10. Plaintiff has thus specified the times he visited the site, the specific website functions he could not access, and how this prevented him from completing transactions. From these facts, it is clear that Plaintiff passes the "low threshold" for standing.

iii.    Plaintiff Properly Pleads a Threat of Future Injury

Contrary to Defendant's arguments, Plaintiff has established a threat of future injury. The threshold for a threat of future injury is passed when a plaintiff alleges that particular accessibility issues prevented them from making informed choices. *See Harty v. W. Point Realty, Inc.,* 47 F.Supp 3d 163, 169-170 (S.D.N.Y. 2020) (*citing Camacho*, 2019 U.S. Dist. LEXIS 209202 at *10).

The *Kreisler* case, glossed over in Defendant's motion (Def. Mem. at *13), is instructive. There, the Court found that the plaintiff had standing to sue a restaurant for ADA violations despite the plaintiff never entering the defendant's physical restaurant. *Kreisler*, 731 F.3d at 188. The Court based this finding on allegations that the plaintiff had been deterred by barriers making the diner inaccessible, and that plaintiff had plead a reasonable inference that he would visit the facility

if the violation were remedied. *Id.*; *see also Camacho*, 2019 U.S. Dist. LEXIS 209202, at \*29 (finding plaintiff's allegations allowed for "a reasonable inference that he intends to return to the [subject] [w]ebsite" after alleging multiple website visits, motivation for returning to visit "in the future," and that he could return to the website when it is made accessible).[6] Defendant does not contend with the content of the pleading, merely attacking Plaintiff as "a serial litigant" with "general intent to return to the website." Def. Mem. at \*13.

The SAC alleges allegations similar to those found in both *Kreisler* and *Camacho*. As in *Kreisler*, the SAC pleads that Plaintiff would return to complete his purchase of pistachios as soon as the Access Barriers are cured. ¶29. As in *Camacho*, Plaintiff has stated he has been deterred from using the Website (¶31), but intends to return to complete a purchase in the future. ¶¶5, 29. Therefore, the SAC correctly pleads the continuing threat of future injury that Plaintiff and other visually impaired consumers face from Defendant's Website.

iv.   <u>Plaintiff's Claims Are Not Moot</u>

Defendant's bald assertions that Defendant's president "can confirm that the [Website] is in fact accessible" based on third party representations (Def. Ex. 2 at ¶16) are not sufficient to moot a case.

Rather, as found in *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 441-42 (S.D.N.Y. 2018), "[a] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome…. [a] defendant cannot…  automatically moot a case by voluntarily ending the unlawful conduct alleged in a plaintiff's complaint." *Id.* (*citing Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721 (2013)).  Under the ADA, requests for injunctive

---

[6]       Likewise, "a plausible intention or desires to return does not require a specific date for the plaintiff's return to the … Website. . . [accordingly, the] [p]laintiff's statements that he would return to the website in the future to assess whether he could make a reservation are sufficient to confer standing." *Monge v. 405 Hotel Llc*, No. 19-CV-0451 (SJF) (ARL), 2021 U.S. Dist. LEXIS 36039, at \*17 (E.D.N.Y. Feb. 24, 2021).

relief will be deemed moot only "if the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" *Id.* (*citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 190, 120 S. Ct. 693 (2000)). This is necessary, as "[o]therwise, upon dismissal a defendant could simply resume its conduct." *Id.* (*citing Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307, 132 S. Ct. 2277 (2012)). The court found that the *Wu* defendant, who had designed a completely new website and asserted it was WCAG 2.0 compliant, did not demonstrate that the issue was moot absent further proof. *Id.* at 441.

Defendant states, with minimal support, that its Website is now compliant with WCAG 2.0 AA. Def Mem. at *15; Def. Ex. 2 at ¶16. Setting aside that the relief sought by Plaintiff and the other class members in the SAC is based on version 2.1 of the WCAG guidelines (¶¶ 20, 34, 37), Defendant's assertions of compliance rely on the alleged findings of a non-party and the use of online tools to allegedly check website accessibility and maintain compliance. Def. Ex. 2 at ¶16. However, none of the facts put forth by Defendant were subjected to the rigors of discovery or cross examination. As such, Defendant has not adequately demonstrated that it has removed the Access Barriers present on the Website. At best, these assertions represent a set of counter allegations to the specific, ongoing violations which the SAC properly pleaded. ¶28. *See Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019) (rejecting mootness argument where plaintiff identified continued barriers to accessing certain videos on defendant's website); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) (holding same, where complaint alleged, and court's review of website confirmed, at least one continued barrier to access). Given that Plaintiff

has pleaded ongoing violations, Defendant has not sufficiently met its burden of establishing that the alleged barriers have been remedied and would not occur again.

Defendant's untested extrinsic evidence is also particularly uncompelling given that the Website is still in violation of the WCAG 2.1 standards and the ADA. As attested to in the Declaration of Robert D. Moody, who examined the Website after Defendant's instant motion was submitted, "issues with the website do exist and moreover, those issues are a barrier to individuals with low to no vision." Exhibit A at ¶7. Specific and ongoing barriers found on the Website by Mr. Moody include:

- The company logo acts as a link designed to take the user from wherever they may be within the Defendant's website to the homepage of that site. For this website, the link is not properly labeled and where the link ("logo") will operate properly (taking the user back to the home page), the missing label prevents the user (visually impaired) to interpret the logo/link and in the case of using a screen reader, the screen reader software cannot properly interpret the logo/link effectively hiding the purpose of that link from the user.

- The shopping cart icon is not labeled properly. This flaw creates issues for the interpretation performed by the screen reader and therefore prevents the user from understanding what information the website is trying to report back to the user.

- The site's submenu options for the main menu categories are inaccessible. The screen reader skips these options and goes on to the next main menu category thus barring the user from accessing vital information regarding products and services offered.

- This website's homepage contains a sliding banner. The picture changes every few seconds. It is labeled, however, every time the picture changes, the screen reader reads "barbecue barbecue image" and "bags bags image" every few minutes no matter where the user may be on the home page.

- Throughout the website, there is text providing information. However, it is not labeled to integrate with the screen reader. The information is skipped over to the next available link, heading, or button as the text is not accessible. The site moves directly to the buttons but fails to describe or reference what the user will learn more about.

- When navigating on the home page, the product names and prices are inaccessible barring the user from knowing what product they are purchasing and how much it costs when they select the buy now button. The lack of labeling causes the screen reader to miss the information.

- Contact information is inaccessible. Due to the lack of description the user is not able to contact the business as the address and store hours are not labeled to integrate with the screen reader. Exhibit A at ¶8.

Plaintiff's expert has thus identified ongoing Access Barriers inhibiting the equal use of the Website by the visually impaired. As a result, Defendant's extrinsic evidence ***at best*** presents one set of factual allegations that should be subjected to the rigors of discovery and evaluated by a finder of fact. However, given that these assertions are disputed by both the contents of the pleadings and Plaintiff's expert, Defendant has not met its burden to moot this case.

## B.  THE COURT HAS PERSONAL JURISDICTION UNDER 12(B)(2)

This Court has personal jurisdiction over Defendant because, as established by both the SAC and Defendant's own declaratory evidence, Defendant owns, contributes business content to the Website, and derives revenue from products sold on the Website (which is fully interactive and allows for goods to be purchased within New York State).

The New York long-arm statute provides for an exercise of personal jurisdiction "over any non-domiciliary…who in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). A highly interactive website, such as that maintained by Defendant, meets the requirements of personal jurisdiction under C.P.L.R. § 302(a). If a website "allows for transactions to be completed, for example, by allowing the purchase of goods or services, then the website is fully interactive and can support the exercise of New York's jurisdiction over those transactions." *Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER), 2019 U.S. Dist. LEXIS 178306, at *8 (S.D.N.Y. Oct. 15, 2019) (*quoting Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007)).

Defendant's assertions that it does not own or operate the Website are belied by its own submissions. First and foremost, Defendant's affidavit evidence states that at the time the initial

Complaint was filed, Defendant owned the domain registration for the Website. Def. Ex. 2 at ¶6. Additionally, a simple glance at the bottom of Defendant's Website shows that Defendant owns the copyright to the Website.[7] Defendant concedes that its corporate affiliate: (i) was created for the sole purpose of selling Defendant's products; and (ii) controls the operation of the Website. Def Ex. 2 at ¶6.  Furthermore, Defendant's affidavit, which refers collectively to both Defendant's corporate entity and its corporate affiliate Germack Roasting Company, LLC as "Germack Companies," also admits these two entities "offer products for sale under the Germack logo and brand" and that "[the Website] sells Germack branded products that originate from *both Germack Companies*." Def Ex. 2 at ¶2 (emphasis added). Both Defendant and Germack Roasting Company, LLC share the same corporate executives, including Frank A. Germack, III, who serves as Defendant's president and managing member of Germack Roasting Company, LLC.  Def. Ex. 2 at ¶¶1-2. As such, Defendant's own evidence makes it clear that Defendant owns the Website, benefits from the sale of its products on the Website, and that a thin line of corporate distinction divide Defendant from its corporate affiliate.

Defendant cannot hide behind the formal separation between the two companies to evade personal jurisdiction. New York's long-arm statute provides for specific jurisdiction over a non-domiciliary that, "'in person or through an agent' transacts any business within the state or contracts anywhere to supply goods or services in the state." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 29806, *21 (S.D.N.Y. Mar. 2, 2017). The term "agent" is "broadly interpreted" for purposes of § 302(a); rather than requiring "a formal agency relationship . . . the court looks to the realities of the commercial situation." *Id*. at *22. Notwithstanding the fact that Defendant holds the copyright and domain

---

[7] *See* www.germack.com, last visited June 23, 2021. Once again, neither party disputes the authenticity of the website, a public document. *See Hotel Emples. & Rest Emples. Union, Local* 100, 311 F.3d at 549.

ownership of the Website, the fact that the Website "sells Germack branded products that originate from both Germack Companies" (Def Ex. 2 at ¶2) would be sufficient to establish specific jurisdiction under the long-arm statute regardless.

Next, it is important to analyze the Website's interactivity. For a website to confer jurisdiction, "[s]omething more [than visibility in the forum state] is necessary, such as interactive features which allow the successful online ordering of the defendant's products." *Novelaire Techs., L.L.C. v. Munters AB*, 2013 U.S. Dist. LEXIS 168192 *10-*11 (S.D.N.Y. Nov. 21, 2013) (*citing Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Yian Chen*, 12 Civ. 6390 (JPO), 2013 U.S. Dist. LEXIS 59538, at *26 (S.D.N.Y. Apr. 25, 2013)). If a website "allows for transactions to be completed, for example, by allowing the purchase of goods or services, then the website is fully interactive and can support the exercise of New York's jurisdiction over those transactions." *Best Van Lines, Inc.*, 490 F.3d at 252.

Defendant's Website clearly allows for the purchase of goods to be shipped nationwide. ¶¶22-24. Indeed, Defendant concedes that the Website "offers an online retail shop at retail prices." Def Ex. 2 at ¶8. The Website offers shipping as far as Alaska, Hawaii, Puerto Rico. *See* supra at *4. As a result, the Website falls into the fully interactive category, offering New Yorkers the ability to visit and purchase goods, including, but not limited, to pistachios. Since Plaintiff unsuccessfully attempted to complete a transaction to have goods delivered to him at his residence in New York on the Website, the Court clearly has personal jurisdiction over this interactive Website's owner and their agents. *See, e.g.*, *Access Now, Inc. v. Sportswear, Inc.*, 298 F. Supp. 3d 296, 301 (D. Mass. 2018) (finding, where the plaintiff alleged the defendant's website limited accessibility to visually impaired consumers and that the plaintiff attempted to access the website with the assistance of his screen reader from the forum, "[b]ecause [the plaintiff's] denial of access

to [the defendant's] website occurred in the forum, the injury arises from [the defendant's] transaction of business through its website in [the forum]").

In the alternative, should this Court not be inclined to exercise personal jurisdiction over Defendant, Plaintiff respectfully requests leave to conduct limited jurisdictional discovery into Defendant's suit-related contacts with New York State, including the extent of Defendant's use of the Website to conduct business in New York. Such jurisdictional discovery is likely to produce evidence of Defendant's proactive attempts at conducting business with New York residents, thus establishing further grounds for personal jurisdiction against Defendant. *See Ikeda v. J. Sisters 57, Inc.*, 14-cv-3570 (ER), 2015 U.S. Dist. LEXIS 87783, at *8 (S.D.N.Y., July 6, 2015) ("It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record"); *see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 05 Civ. 9016 (SAS), 2006 U.S. Dist. LEXIS 11617, at *6 (S.D.N.Y., Mar. 20, 2006) ("[j]urisdictional discovery should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary") (citation omitted).

## C.  THE COMPLAINT PROPERLY PLEADS DEFENDANT'S VIOLATIONS OF THE ADA AND THE NYCHRL

Relying yet again on the thin corporate veneer of distinction between itself and the corporate entity that was created with the explicit intention of running its retail operations, Defendant seeks dismissal of both the ADA claim and the NYCHRL claim under FRCP 12(b)(6) for failure to state a claim, arguing that it does not own the Website. Def. Mem. at *22.  This is supported by Defendant's extrinsic evidence, which goes beyond the four corners of the SAC and

therefore should not be considered by the Court. *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at \*6. Nevertheless, Defendant's own contentions are expressly contradicted by Defendant's affidavit evidence, which demonstrates that it owned the domain registration at the time the complaint was filed. Def. Ex. 2. ¶6.

The text of the ADA states that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods. . . or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.S. § 12182(a). Further, [a] private plaintiff may sue the owner, lessee, lessor, or operator of a non-compliant public accommodation. . . if the owner . . . or operator subjected the plaintiff to discrimination as defined in the ADA." *De La Rosa v. Lewis Foods of 42nd St. LLC*, 124 F. Supp.3d 290, 296 (S.D.N.Y. 2015). It is conduct, not identity, that gives rise to liability under the ADA. *See id*.

Unlawful discrimination under the ADA occurs when there is a "failure to make reasonable modification in policies, practices, or procedures, when such modification are necessary to afford such goods, services, facilities, privileges or accommodations to individuals with disabilities" or a "failure to take such steps as may be necessary to ensure that not individual with a disability is excluded, denied services, segregated or otherwise treated different than other individuals." 42 U.S.C. §§12182(b)(2)(A)(ii)&(iii). ADA violations are continuing as long as the owner or operator of a place of public accommodation does not take steps that eliminate specified categories of barriers to access, and failure to do so is an illegal act of discrimination. *See Lee v. Sutton Garage, LLC*, 15-cv-5460 (KBF), 2017 U.S. Dist. LEXIS 174358, at \*7 (S.D.N.Y Oct. 19, 2017) (*quoting De La Rosa*, 124 F. Supp. 3d at 300).

23

Defendant hinges its arguments upon the ownership of the Website, mistakenly stating that Plaintiff has not pleaded a claim that is plausible on its face because Defendant is a passive bystander with no role in the discrimination occurring on the Website. This is not so. Defendant holds the domain name and copyright of the Website. By its own admission, Defendant contributes content and benefits from the sale of its goods on the Website. Defendant is therefore responsible for the discrimination alleged.

Furthermore, Defendant should not be able to contract out of ADA liability. A defendant cannot rely on factual assertions not in a complaint to disclaim ownership of a website when making a motion under Rule 12(b)(6). *See Ramirez v. Support Buddy Inc.*, 17 CV 5781 (VB), 2018 U.S. Dist. LEXIS 76257, at *12 (S.D.N.Y. May 4, 2018) ("[D]efendants rely entirely on factual assertions in affidavits that were not attached to, incorporated by reference in, or relied heavily upon in the complaint. Defendants do not otherwise contend plaintiffs have failed to plead [defendant] owns the website. Therefore, the Court rejects defendant's arguments that plaintiff's claims should be dismissed because defendants do not own [the website].")

Similarly, as in the context of real estate leases, ADA liability cannot be avoided by way of contractual agreement. *See Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264 (9th Cir. 2015) ("[U]nder the ADA, a party is prevented from doing anything through contractual, licensing, or other arrangements that it is prevented from doing directly").

Indeed, Defendant's reliance on the formal distinction between the functions of the two companies is a procedural technicality that the ADA was deliberately crafted to avoid. During a Congressional debate on May 22, 1990, while the original ADA was under consideration, Mr. Fish of New York stated that Section 302(a) of Title III of the ADA "was added in order to make it clear that the prohibition against discrimination applies to the owner of the building that houses

24

the public accommodation, as well as the owner or operator of the public accommodation itself." Hamilton Fish IV (R. NY) "Americans with Disabilities Act" Congressional Record, 136:8, H11452 (available at congress.gov). Congress's intent of the ADA is clear; the ADA is intended to strike at those who have effective control over discriminatory policies.

In staying true to Congress' intentions behind the ADA, Defendant, as owner of the Website and a direct beneficiary of the transactions conducted thereon, should not be able to hide behind an effective "shell company" to avoid liability under the ADA and the NYCHRL.

**VI.**   **CONCLUSION**

For the reasons set forth above, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety.

Dated: Brooklyn, New York
          June 23, 2021

                                                    **COHEN & MIZRAHI LLP**

                                                    /s/ Joseph H. Mizrahi
                                                    Joseph H. Mizrahi
                                                    William J. Downes
                                                    300 Cadman Plaza West, 12th Floor
                                                    Brooklyn, New York 11201
                                                    Tel: (929) 575-4175
                                                    Fax: (929) 575-4195
                                                    jmizrahi@cmlattorneys.com
                                                    wdownes@cmlattorneys.com

                                                    *Attorneys for Plaintiff*